**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph W. BOOTHMAN and Benny E. Avery, Defendants-Appellants.**

**Nos. 79–2137, 79–2138.**

United States Court of Appeals, Tenth Circuit.

July 20, 1981.

Robert E. Hart, Independence, Mo., and Leonard V. B. Sutton, Denver, Colo., with David C. McConnell, Kansas City, Mo. on the brief, for defendants-appellants.

Sheryle L. Jeans, Dept. of Justice, Washington, D. C., with James P. Buchele, U. S. Atty., District of Kansas, and Grover G. Hankins, U. S. Dept. of Justice, Kansas City, Kan., on the brief for plaintiff-appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and KERR, District Judge.*

KERR, District Judge.

These companion appeals come before us from the United States District Court for the District of Kansas. Defendants-appellants were tried and convicted in a jury trial of conspiracy to misapply monies belonging to the Credit Union of America in violation of 18 U.S.C. §§ 371 and 657 and of knowingly making false statements on an application for a home improvement loan in violation of 18 U.S.C. § 1010.

The facts, viewed in a light most favorable to the government, are as follows: The Overland Park, Kansas branch of the Credit Union of America (CUA) had entered into a contract of insurance with the United States to make FHA home improvement loans. The loans were limited to use for home improvement only and the maximum

---

* Of the United States District Court for the District of Wyoming, sitting by designation.

amount for which the loans could be issued was $7500.

John Bellmeyer (Bellmeyer) was employed at the Overland Park branch of the CUA from June 1975 to July 1976. Bellmeyer was a co-defendant in this case but his Motion to Sever was granted by the trial court. Bellmeyer later pled guilty and was the key government witness in the actions now before us on appeal.

James M. Giordano (Giordano) was another co-defendant in the case, but he also pled guilty. Giordano was the owner of Atlas Builders and Remodeling Experts, a home improvement company.

Bellmeyer and Giordano first met when Giordano referred several dealer loan applicants to Bellmeyer. The CUA handled two different types of home improvement loans, direct loans and dealer loans. Direct loans were initiated by and made to the borrower whereas dealer loans were initiated on a referral basis by the contractor. Giordano had referred a substantial number of dealer loans to the CUA until January, 1976 when Bellmeyer informed Giordano that Giordano's work had declined and therefore Giordano's status as an approved dealer for loans was being terminated. Bellmeyer received a bomb threat the day after the termination. Giordano and Bellmeyer met in January of 1976 to discuss Giordano's reinstatement as an approved dealer. Bellmeyer informed Giordano that reinstatement was not possible. During the discussion, however, the two men agreed to a scheme whereby Giordano would grant the loans without running any appropriate checks and analyses of the prospective applicants.

Bellmeyer would keep the signed applications and handwritten credit reports in his desk until Giordano would call and tell him which applicant would be coming in for a loan.

At the credit interview, Bellmeyer and the applicant would fill in some of the required forms. A few perfunctory questions were asked by Bellmeyer in an attempt to make the file appear legitimate. The applicant would then receive a check for $7500.

The loan was granted regardless of whether or not the money was to be used for home improvement. The credit information provided was never checked nor was it relied upon by Bellmeyer in the issuance of the loans. In return for his services, Bellmeyer received money from Giordano.

Defendant Benny Avery (Avery) was the first loan applicant sent by Giordano to Bellmeyer on March 8, 1976. Avery was accompanied by defendant Joseph Boothman (Boothman) and John Brocato (Brocato). Avery filled out and signed his own application.

The second applicant sent to Bellmeyer by Giordano was Boothman. Boothman was accompanied to the CUA by Avery and Brocato on March 9, 1976.

Avery eventually paid his loan off after he was in default and was so notified. Upon final payment, Avery demanded that his entire file be returned to him.

Boothman called the CUA to state that his loan was separate from Avery's. Boothman also wanted verification that his loan was legal. He later said that he could see no reason to pay the loan if he was going to jail.

The issues before us on appeal are simply stated: (1) Was the verdict on all counts substantially supported by the evidence? (2) Was error committed upon the failure of the trial judge to admit into evidence Exhibits A, B, and C proffered by Boothman? (3) Was it error to admit the stipulation used in the prior trial after appellants had repudiated part of it as factually untrue? (4) Was Boothman denied his right of effective assistance of counsel?

The evidence adduced at the trial must be considered in the light most favorable to support the jury's verdict. It is well established that an appellate court does not weigh the evidence or consider witness credibility. Rather, the evidence, both direct and circumstantial, must be viewed in a light favorable to the prosecution. *United States v. Goldstein*, 649 F.2d 799 (10th Cir. 1981); *United States v. Wilks*, 629 F.2d 669 (10th Cir. 1980); *United States v. Har-*

*per,* 579 F.2d 1235 (10th Cir. 1978), cert. denied, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *United States v. Downen,* 496 F.2d 314 (10th Cir. 1974), cert. denied, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974); *Mason v. United States,* 408 F.2d 903 (10th Cir. 1969), cert. denied, 400 U.S. 993, 91 S.Ct. 462, 27 L.Ed.2d 441 (1971).

■ After a complete review of the record, we hold that appellants' first contention is without merit. There is substantial evidence to support the jury's verdict.

Avery's loan application contained false statements regarding his property ownership and debts owed to the government. The stipulation submitted by counsel to the trial court and the jury stated that between January 1976 and July 27, 1976 Avery was not the titleholder of the property named on the application. Furthermore, Avery owed over $30,000 in bank loans of which only $13,500 was mentioned on the application.

Boothman's application falsely represented that he was the owner of the property to be improved and also misstated Boothman's existing debts and obligations.

Appellants were also convicted of conspiracy to misapply monies of the CUA. They argue that, although a conspiracy between Bellmeyer and Giordano was established, there was no evidence of conspiracy pertaining to Boothman and Avery. We disagree. In *United States v. Andrews,* 585 F.2d 961 (10th Cir. 1978), we discussed the crime of conspiracy. We noted that the essence of the crime "is an agreement to violate the law." We also noted that "once a conspiracy is established, only slight evidence is required to connect a co-conspirator." Furthermore, we said that "a party may join an ongoing conspiracy during its progress and may become criminally liable for all acts done in furtherance of the scheme."

The record discloses that there was sufficient evidence to establish a conspiracy and that the appellants were a part of the conspiracy.

■ Boothman argues that the failure to admit Exhibits A, B and C by the trial court constituted error. At trial, the government attempted to establish that Boothman had an outstanding debt owed to a hospital that was not listed on his loan application. The exhibits in question were offered to establish the fact that Boothman had filed a lawsuit against the hospital and some doctors for malpractice and because of the suit he had been told by counsel not to pay the bill. The testimony of counsel established the fact that Boothman had definitely been told by counsel not to pay the bill because a malpractice suit was going to be filed. The exhibits in question were documents pertaining to the lawsuit which was filed in late August of 1976. The loan and events in question in the current case occurred in early March 1976. The trial court ruled that the exhibits were not admissible on relevancy grounds because of the time lapse. It is axiomatic that the trial judge is vested with a large amount of discretion regarding the admission of evidence. *United States v. Carranco,* 551 F.2d 1197 (10th Cir. 1977). See also *United States v. Hill,* 627 F.2d 1052 (10th Cir. 1980). We hold that no abuse of discretion occurred in the exclusion of Boothman's Exhibits A, B and C.

■ The third issue raised by appellants refers to a stipulation admitted at trial by the court. Appellants entered into the stipulation prior to their first trial, which ended in a hung jury. Sometime prior to the second trial, appellants raised the contention that part of the stipulation was factually incorrect. As the trial court aptly pointed out, both appellants read and signed the stipulation, along with counsel. There was no abuse of discretion nor was there any evidence in the record of any error or prejudice accruing to appellants.

**704**

■ The final issue before us raises the question of effective assistance of counsel for Boothman. As noted above, appellants' first trial ended in a hung jury. In the first trial, both appellants chose to take the stand and testify. In the second trial, they did not. In both trials, Boothman was represented by David C. McConnell (McConnell). In the second trial, Avery was represented by Michael Lerner (Lerner). Avery's counsel took the lead position in both trials. In the second trial, Lerner did most of the questioning although McConnell did make it clear that the questioning by Lerner was equally applicable to both Avery and Boothman. McConnell did present and examine one witness. Boothman claims that he received ineffective assistance from McConnell because McConnell was taken by surprise when Lerner rested defendants' case without calling Avery or Boothman to the stand. It is claimed that McConnell was in a state of semi-shock when Lerner rested. A review of the record discloses that McConnell failed to raise the issue at any time prior to the sentencing and post trial hearing. No objection was made after Lerner announced that defendants had rested. McConnell did not ask to approach the bench, nor did he attempt to speak with the judge during the fifteen minute recess which occurred immediately after Lerner's pronouncement. It appears to us that a tactical decision was made by counsel even though McConnell claims that he knew nothing of the decision that defendants would not take the stand. Furthermore, both appellants took the stand at the post-trial hearing and each testified that, after discussing the pros and cons of taking the stand with counsel, each voluntarily decided on his own not to take the stand and testify. Lerner allegedly told both Avery and Boothman not to tell McConnell about the final decision not to testify because Lerner was afraid that McConnell would reveal their strategy to the prosecution. This court has held that in order to grant relief on the basis of ineffective assistance of counsel, the record must show that "the representation received fell below the minimum standard of reasonable skill and competence expected of a defense attorney in a criminal case." *Dyer v. Crisp*, 613 F.2d 275 (10th Cir. 1980). We hold there is not a scintilla of evidence that the assistance of counsel fell below this standard.

Having held that the allegations of error raised by appellants are without merit, the judgment of the trial court should be and is

AFFIRMED.