UNITED STATES of America, Appellee,

v.

**Frederick MARSH,***
**Defendant, Appellant.**

No. 82–1888.

United States Court of Appeals,
First Circuit.

Argued Feb. 10, 1984.

Decided July 17, 1984.

Bailey Aldrich, Senior Circuit Judge, concurred and filed an opinion.

Opinion after remand, 1st Cir., 747 F.2d 14.

* This opinion also covers Nos. 82–1889, *United States v. Anouncio Archbold;* 82–1890, *United States v. Jean Archbold;* 82–1891, *United States v. Fernandez Barker;* 82–1892, *United States v. Jose Ospina;* 82–1893, *United States v. Victor Figueroa;* and 82–1921, *United States v. Augustin Archbold.*

Stephen M. Perry, Boston, Mass., by appointment of the Court, with whom David M. Roseman, Casner, Edwards & Roseman, John Russell, Herlihy & Russell, Raymond Gillespie, Daniel Kelleher, Michael O'Laughlin, Anne Mackin, Stephen Morse, Guterman, Horvitz, Rubin & Rudman, Boston, Mass., and Martin Gideonse, Cambridge, Mass., were on brief, for appellants.

Tobin Harvey, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., and John C. Doherty, Asst. U.S. Atty., Boston, Mass., were on brief, for appellee.

Before COFFIN and ALDRICH, Circuit Judges, and GIGNOUX,** Senior District Judge.

** Of the District of Maine, sitting by designation.

COFFIN, Circuit Judge.

■ This is a consolidated appeal. All of the defendants were found aboard the GRIMURKAMBAN, a 120-foot coastal freighter of Danish registry, which was carrying about 60 tons of marijuana when it was stopped and boarded by the United States Coast Guard on July 14, 1982, in international waters some 270 miles off the northeastern coast of the United States. These defendants, all of whom are citizens of either Jamaica or Colombia,[1] were convicted of conspiring to import marijuana, 21 U.S.C. § 952, 960 & 963, conspiring to possess marijuana in excess of 1,000 pounds with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(6) & 846, and possessing with intent to distribute in excess of 1,000 pounds of marijuana, 21 U.S.C. §§ 841(a)(1) & 841(b)(6).[2]

On appeal all of the defendants except for Fernandez Barker, who was tried separately before a jury, argue that there was insufficient evidence to support their convictions and that the district court, which decided the case on the basis of stipulated facts and evidence in a jury waived trial, erred in relying on the so-called "slight evidence" rule in finding that the defendants had conspired to import marijuana into the United States. In addition, all of the defendants argue that the search warrant authorizing the search of the GRIMURKAMBAN was invalid and that the seizure and prosecution of the GRIMURKAMBAN's crew violated United States and international law.

Summarizing our views in reverse order, we decide first, that the boarding and seizure of the GRIMURKAMBAN and the prosecution of its crew did not violate United States and international law. Second, we decide that although the July 19 search warrant was invalid because not based on probable cause, defendants are not entitled to a new trial on that basis because no rights of any defendant appear to have been infringed by the illegal search. Finally, however, we have enough uncertainty about whether the district court may, in its invocation of the "slight evidence" rule, have impermissibly lowered the government's burden of proof in establishing that the defendants knew the destination of the cargo to remand the case for clarification.

### The Boarding and Seizure of the GRIMURKAMBAN

All of the defendants contend that the Coast Guard violated domestic and international law in boarding and seizing the GRIMURKAMBAN. We disagree.

■ The district court properly concluded that the Coast Guard acted within its statutory authority in boarding the GRIMURKAMBAN. Although the Coast Guard has no regular authority to search foreign vessels not within the customs waters of the United States or within a designated "customs enforcement area", *see* 19 U.S.C. § 1701, the Coast Guard (and other government agents) may search or seize a foreign vessel "upon the high seas" if "enabled or permitted under special arrangement with [the] foreign government", 19 U.S.C. § 1581(h). The district court properly found that the government of Denmark entered into such a "special arrangement" when it gave the United States government permission to board and seize the GRIMURKAMBAN. *United States v. Green,* 671 F.2d 46, 51–52 (1st Cir.1982); *United States v. Dominguez,* 604 F.2d 304, 308 (4th Cir.1979). Thus the district court committed no error in ruling that the Coast Guard acted within its statutory authority in boarding and seizing the GRIMURKAMBAN. *See generally United States v. Hensel,* 699 F.2d 18, 26–30 (1st Cir.1983)

1. The only Danish citizen found aboard the GRIMURKAMBAN, Paul Norgaard, was extradited to Denmark where he was convicted of violating Danish law by conspiring to import marijuana into the United States aboard a Danish vessel.

2. All of the defendants have completed their jail terms and have been deported. Their record of conviction constitutes a continuing harm, however, which may prevent their entry into this country in the future. *See, e.g.,* 8 U.S.C. § 1182(a)(9). Accordingly, their appeals are not moot. *Sibron v. New York,* 392 U.S. 40, 50–58, 88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917 (1968).

(discussing the validity of searches of foreign ships in international waters under 14 U.S.C. § 89(a) and international law).

■ Nor did the Coast Guard violate the Fourth Amendment rights of the defendants when it boarded and seized the GRIMURKAMBAN. In *United States v. Green*, 671 F.2d at 53, we held that "the fourth amendment allows government officers, who are otherwise authorized, to board and search a vessel on the high seas should they have reasonable and articulable grounds for suspecting that it is engaged in criminal activity" [footnote omitted]. This "reasonable suspicion" standard, which was first enunciated in *United States v. Williams*, 617 F.2d 1063, 1087 (5th Cir.1980) (en banc), requires less than probable cause to justify a non-administrative maritime search. As the district court noted, the Coast Guard had ample cause to suspect the GRIMURKAMBAN: it was initially sighted within the general area that Coast Guard intelligence had earlier suggested a "mother ship" carrying contraband might be found; it changed its course erratically when the Coast Guard Cutter BIBB came within the scope of its radar, a course of conduct the Coast Guard considered suspicious and evasive; despite its appearance as a fishing boat, it carried no fishing gear; it was not flying the flag of any nation; as the BIBB approached no one came on deck to look at the Coast Guard cutter, which was unusual; the cargo boom was in an upright position and appeared to have been readied for use or recently used; the vessel's name and home port were not both painted on the stern; and its crew advised the Coast Guard that the ship was bound from the Netherland-Antilles to Bermuda, a declaration inconsistent with the ship's position.

In *Green* we noted that search warrants are not usually required for shipboard searches because a "lesser expectation of privacy" prevails at sea. 671 F.2d at 53. Although we declined to define exactly the permissible bounds of a warrantless shipboard search initiated pursuant to the reasonable suspicion standard, we did emphasize that "[o]ur present holding is not to be understood as giving officers carte blanch to search living quarters or personal effects, such as footlockers". 671 F.2d at 53. The Coast Guard did not run afoul of that proscription in this case.

Since the presence of marijuana was immediately apparent to the boarding party, it is properly in evidence in these proceedings. Similarly, the government may introduce any other evidence it found in common (or commercial) areas of the GRIMURKAMBAN while securing the vessel or bringing it to port. *See United States v. DeWeese*, 632 F.2d 1267, 1271 (5th Cir.1980) ("there can be no legitimate expectation of privacy in those areas of a commercial vessel which are subject to the common access of those legitimately aboard the vessel.").

**The Validity of the Search Warrant**

The sole matter that was presented to the magistrate who issued the warrant was the affidavit of Special Agent Allen, an agent with ten years service in the Drug Enforcement Administration. The affidavit reveals that the Coast Guard cutter BIBB stopped and boarded a Danish vessel, the GRIMURKAMBAN, at an unspecified location, of unspecified heading, with the permission of the Danish government while on law enforcement patrol; that a large quantity of marijuana was evident "in all parts of the boat"; that marijuana was the only cargo found aboard the ship; that the ship was equipped with sophisticated navigation and communication equipment; that navigation charts indicating "various locations from Europe to the Carribbean area" were observed in the wheelhouse; that the agent's experience led him to believe that the GRIMURKAMBAN carried charts, logs, and other documents indicating its past travels and activities; and that the agent believed that these charts, logs, and other documents "constitute[ ] evidence of violations of title 21, United States Code, Sections 841(a)(1); 846, 952, 960 and 963".

The affidavit obviously established probable cause to believe that the GRIMURKAMBAN was carrying a large quantity of marijuana. And if there had been an aver-

ment that the ship was off Nantucket and headed for the United States when first located by the Coast Guard, the finding of probable cause to import into the United States would have been supported. But nothing in the affidavit suggested that the marijuana was bound for the United States or that the ship or its crew had any connection whatsoever with the United States. Indeed, given that the navigation charts observed bore European and Carribean markings, one might have concluded from the affidavit that Europe was the GRIMURKAMBAN's most likely destination. The only statement in the affidavit suggesting that the laws of this country might have been violated was the DEA agent's allegation that he believed the GRIMURKAMBAN carried charts, logs, and other documents demonstrating that the crew of the GRIMURKAMBAN had violated those United States statutes that prohibit conspiracies to import, possess, and distribute controlled substances.

 Although we accord "great deference" to a magistrate's probable cause determination, *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that determination "cannot be a mere ratification of the bare conclusions of others". *Id.* at ——, 103 S.Ct. at 2332. Probable cause cannot "be made out by affidavits which are merely conclusory . . . ." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). The DEA agent's statement that he believed evidence of a conspiracy to import marijuana into the United States would be found aboard the GRIMURKAMBAN was nothing more than a conclusion; it was not supported by the underlying circumstances described in his affidavit. None of the facts recited in the affidavit established probable cause to believe that the crew of the GRIMURKAMBAN was engaged in a conspiracy to import marijuana into the United States.

This ruling, however, does not mean that the evidence introduced at the jury waived trial ought to have been suppressed. Because, as we have already held, the Coast Guard acted properly in boarding and seizing the GRIMURKAMBAN, the government could properly introduce any evidence it discovered in common (or commercial) areas of the ship while properly aboard the GRIMURKAMBAN. Although our reading of the record indicates that a number of items seized pursuant to the invalid warrant were part of the evidence at trial, all of them appear to have been found in common (or commercial) areas of the ship. The navigation charts, for instance, were found in the ship's chart room and the paper containing what appears to be some type of code was found in the engine room. Since none of these items was taken from the crew's living quarters or the defendants' personal effects, suppression was not required.

Nor does our ruling require that we vacate Barker's conviction. While several items that were improperly seized were introduced into evidence at his trial, Barker's Fourth Amendment rights would have been violated only if the invalid search "invaded *his* legitimate expectation of privacy rather than that of a third party". *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980) (emphasis original). Since the walkie-talkies and navigation notes introduced at trial were found among the belongings of another member of the crew, Paul Norgaard, their discovery and seizure did not infringe Barker's expectation of privacy. It is not clear who owned the newspaper that was found in a berthing area behind the pilothouse, but since Barker testified that he slept in the bow of the ship, we fail to see how he can claim any expectation of privacy in the newspaper. Moreover, the only evidence contributed by the newspaper was that the vessel and its crew had some connection with Colombia, a fact already evidenced by testimony that Barker was a citizen of Colombia and that many of the marijuana bales were stamped "Product of Colombia".

### The "Slight Evidence" Reference

The district court's reference to the "slight evidence" principle in connection

with its determination of the defendants' knowledge of the objective of the conspiracy gives us pause.

In a careful opinion from the bench the court first announced its conclusion that "the essential elements of the case have been proved against each of the defendants beyond a reasonable doubt". Then it marshalled the evidence and concluded that all the defendants were willing participants in a conspiracy to transport contraband.

Addressing the specific issue of knowledge by each defendant that the cargo of contraband was intended to be brought to the United States, the court noted that the vessel, when first identified, was heading toward the United States; that the most accessible chart indicated a United States destination while no charts covered ports of call in other countries; and that the few crew members had ready access to information from the sophisticated navigation equipment aboard. At this point the court stated:

> "The Court here, with respect to the knowledge of the defendants, relies again on a settled principle of law, and I quote here, but it is mentioned in many other cases, from the *Cadena* case, 585 Federal Report (sic) 2d page 1252, at page 1266: 'Once the existence of a conspiracy and the defendant's participation in it are both established, slight evidence of the defendant's knowledge of the scheme may be sufficient to sustain the jury's finding that he or she was a member,' quoting numerous cases."

The court added the observation that another circumstance supporting its inference that the defendants knew the intended destination of the contraband was that conspirators dealing with a sixty million dollar cargo would not "trust to be aboard the ship ... persons who are unwilling to join in an illegal conspiracy or who may not be trusted with knowledge of its illegal purpose." Whereupon the court concluded by saying, "I have, I must confess, little difficulty in determining the existence of each essential element beyond a reasonable doubt with respect to Count One, which is the conspiracy to import into the United States."

■ We have no difficulty with the court's findings that there was a conspiracy to transport contraband and that all defendants were participants. The only question that concerns us is whether there was sufficient evidence of a knowing participation by each of the defendants in the conspiracy charged, i.e., a conspiracy to import *into the United States*. Such knowledge and intent is, of course, a necessary element of the case to be proven beyond a reasonable doubt. *United States v. Hayes*, 653 F.2d 8, 15–16 (1st Cir.1981); *United States v. Conroy*, 589 F.2d 1258, 1269–70 (5th Cir.1979).

In this case direct evidence was lacking. The circumstantial evidence and the inferences which could reasonably be drawn from it may or may not have been sufficient to support a finding that all of the defendants knew the cargo's destination. This is a close question. We note that in *United States v. Cadena*, 585 F.2d 1252 (5th Cir.1979), quoted by the district court, there was one persuasive piece of evidence that is missing here, the offloading of contraband to a receiving vessel bearing the name of a United States home port. Even this evidence was later described by the Fifth Circuit as being "the minimal quantum of evidence held sufficient." *United States v. Reyes*, 595 F.2d 275, 280 (5th Cir.1979).

■ What troubles us is that the district court chose this most vulnerable link in the chain, the extent of the defendants' knowledge of the contraband's destination, as the occasion for relying specifically on the "principle" that "slight evidence of the defendant's knowledge of the scheme may be sufficient." Even though the court had earlier noted that willful participation by each defendant must be shown beyond a reasonable doubt and later would express its satisfaction that "each essential element" had been established beyond a reasonable doubt, we are left uncertain as to whether or not the court applied a lower standard of proof to the question of the

defendants' knowledge of the contraband's intended destination.

If that is how the court reasoned, it would have been an improper application of the principle. In *Cadena,* the court had already held that "the crew knew that ... [the marijuana] was destined for the United States". Its use of the words "slight evidence of the defendant's knowledge of the scheme", as was shortly made clear, referred to the irrelevance of a defendant's imperfect knowledge of "the entire scope of the conspiracy or the identity of the other co-conspirators". 585 F.2d at 1266. We add that the Fifth Circuit experienced such difficulty with the "slight evidence rule" that it subsequently decided to "banish" it. *United States v. Malatesta,* 590 F.2d 1379, 1382 (1979) (en banc).

Knowledge of the basic "agreement", *i.e.,* the plan to import into the United States, is an essential element of the crime charged. It must be proven beyond a reasonable doubt. This kind of knowledge is to be distinguished from knowledge of all the details of the conspiracy as to quantities, outlets, and people involved, which clearly is not a prerequisite to the guilt of a conspirator. If the "slight evidence" concept is to be used at all, we think that the emphasis should be, not on the quantum of proof of any element of a conspiracy, such as knowledge of the objective, but on the breadth of connection of a defendant to it. We subscribe to the following statement of the rule:

> "Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight,* is suffi-

cient to convict him with knowing participation in the conspiracy. Thus, the word 'slight' properly modifies 'connection' and not 'evidence.' It is tied to that which is proved, not to the type of evidence or burden of proof." *United States v. Dunn,* 564 F.2d 348, 357 (9th Cir.1977) (emphasis original) (footnote omitted).[3]

█ In other words, if the government proves beyond a reasonable doubt at least a slight, though willing and knowing, connection between a defendant and a conspiracy, an appellate court will affirm the defendant's conviction for participation in that conspiracy. It perhaps should be called the "slight connection" rule instead of the "slight evidence" rule. This, indeed, is the sense in which we have used the rule in what we think is the only occasion we have had to invoke it. *United States v. Smith,* 726 F.2d 852, 866 (1st Cir.1984) (en banc) (holding that the government had adequately demonstrated the connection of various defendants to a heroin distribution scheme).

Our uncertainty as to the standard of proof employed by the district court in satisfying itself that the multi-defendants (all those except Barker) had a knowing connection with a conspiracy to import into the United States leads us, while retaining jurisdiction, to remand the case for clarification of its finding as to this factor. If the court states that its determination that the defendants knew that the United States was the destination of the contraband was based on slighter evidence than that required to support a finding of such knowledge beyond a reasonable doubt, then the district court shall vacate the convictions,

---

**3.** We therefore advise counsel and judges not to take literally language such as "once the existence of conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it". *See, e.g., United States v. Brooklier,* 685 F.2d 1208, 1219 (9th Cir.1982); *United States v. Reeves,* 674 F.2d 739, 747 (8th Cir. 1982); *United States v. West,* 670 F.2d 675, 685 (7th Cir.1982); *United States v. Boothman,* 654 F.2d 700, 703 (10th Cir.1981); *United States v. Marrapese,* 486 F.2d 918, 921 (2nd Cir.1973); *United States v. Knight,* 416 F.2d 1181, 1184 (9th

Cir.1969; *United States v. Chambers,* 382 F.2d 910, 913 (6th Cir.1967). Such language "may be construed to imply that participation in a criminal conspiracy may be proved by evidence that would be inadequate to prove the commission of some other criminal act". *United States v. Dunn,* 564, F.2d 348, 356 (9th Cir.1977). So understood, the slight evidence rule "would vitiate the Government's ever-present burden of proof, the requirement that guilt must be proved ... beyond a reasonable doubt ....". *Id.*

**14**

and shall so notify us. If, however, the court, despite the ambiguity which has concerned us, did find such knowledge to have been established beyond a reasonable doubt, it shall so state and return the case to us for our further deliberations as to whether or not there was in fact sufficient evidence to support the convictions.

### Other Issues

■ The defendants contend that the government lacked authority under international law to indict and prosecute them. The district court properly rejected this claim in its memorandum of decision on October 12, 1982. Rather than repeat the district court's analysis, which is complete and well-reasoned, we will merely emphasize that Denmark waived its rights under Article 6(1) of the Convention on the High Seas, *opened for signature* April 28, 1958, 13 U.S.T. 2312, T.I.A.S. No. 5200 (entered into force Sept. 30, 1962), which provides that "ships shall sail under the flag of one State only and ... shall be subject to its exclusive jurisdiction on the high seas'" when it gave the United States government permission to board the GRIMURKAMBAN and bring it into port. Once the GRIMURKAMBAN was brought into United States waters, the protections of Article 6(1) no longer applied. Inasmuch as the Danish government never objected to the indictment and prosecution of these defendants and inasmuch as the prosecution of these defendants is not in conflict with the terms or policy of the Convention on the High Seas, we do not hesitate to affirm the district court's conclusion that these defendants were properly before the court. *See United States v. Green*, 671 F.2d 46, 49–50 (1st Cir.1982).

We also reject the defendants' claim that the district court erred in admitting various documents evidencing Denmark's consent to the prosecution of the defendants by the United States government. It is sufficient to observe that in admitting these documents the district court properly found that the requirements of Fed.R.Evid. 803(24) were satisfied.

*The conviction of Fernandez Barker is affirmed. While retaining jurisdiction of the cases of the other defendants, we remand them to the district court for clarification of its findings and any further action consistent with this opinion.*

BAILEY ALDRICH, Senior Circuit Judge (concurring).

I join fully with the court, except that I do not share its concern as to a possible misuse of the slight evidence rule. Other than to note it, there is no need in my pursuing this matter, however, in light of the terms of the remand.

---

\* This opinion also covers Nos. 82–1889, *United States v. Anouncio Archbold;* 82–1890, *United States v. Jean Archbold;* 82–1892, *United States v. Jose Ospina;* 82–1893, *United States v. Victor Figueroa;* and 82–1921, *United States v. Augustin Archbold.*