**UNITED STATES of America**

v.

**Mauricio LONDONO–VILLA,
Defendant.**

**No. S 89 Cr. 820 (PKL).**

United States District Court,
S.D. New York.

April 9, 1990.

**544**

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Elizabeth Glazer, of counsel), for U.S.

Litman, Asche, Lupkin & Gioiella, New York City (Jack T. Litman, Richard M. Asche and Scott B. Tulman, of counsel), for defendant.

1. Londono and co-defendant Nelson Cuevas–Ramirez ("Cuevas") were also charged in the superseding indictment, S 89 Cr. 820, with two additional counts, conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 812, 841 and 846, and aiding and abetting the substantive offense of possession

## ORDER AND OPINION

LEISURE, District Judge:

Defendant Mauricio Londono–Villa ("Londono") was convicted after a trial by jury on two counts: first, for conspiring to import cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960, and 963 and second, for aiding and abetting the importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960, and 18 U.S.C. § 2.[1] Defendant has filed post-trial motions pursuant to Fed.R.Crim.P. 29(c), to set aside the verdict of the jury on both counts, and pursuant to Fed.R.Crim.P. 33 and 34, demanding a new trial and an arrest of judgment. In brief, defendant argues that the Court erred in instructing the jury on the elements of the crimes charged in both counts of the indictment. More specifically, defendant claims that the government is required, under the relevant federal narcotics statutes and the caselaw interpreting them, to prove beyond a reasonable doubt that the defendant knew that the intended destination of the cocaine was the United States, and that it was the defendant's specific intent to import the cocaine into the United States.

## BACKGROUND

In deciding post-trial motions pursuant to Fed.R.Crim.P. 29(c), the Court must view the evidence "in the light most favorable to the government," *United States v. Gurary*, 860 F.2d 521, 523–24 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1931, 104 L.Ed.2d 403 (1989), and draw all reasonable inferences and resolve all issues of credibility in favor of the verdict. *United States v. Villegas*, 899 F.2d 1324, 1338–39 (2d Cir.1990); *United States v. Chang An–Lo*, 851 F.2d 547, 554 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). The following brief synopsis of the relevant facts is presented pursuant to this standard.

with intent to distribute cocaine in violation of 21 U.S.C. §§ 812 and 841, and 18 U.S.C. § 2. These counts were dismissed by the Court at the close of the government's case. Defendant Cuevas was acquitted by the jury on the remaining counts.

In March, 1987, several individuals, including co-defendant Cuevas, met in Panama City, Panama to discuss a plan to import approximately 150 kilograms of cocaine from Colombia through Panama and into the United States (Tr. at 111–35).[2] Accompanying one of the central conspirators from Colombia to Panama, but not participating in any of the negotiations, was defendant Londono (Tr. 131). Londono's role was to assist another participant in the plan, Frank Kelly ("Kelly"), a government confidential informant, in the navigation of a small plane from Panama City to an airstrip in rural Colombia where the shipment of cocaine was to be waiting (Tr. 131–35, 320–28). Londono would then remain in Colombia while Kelly flew back to Panama and eventually on to the United States.

While in Panama, Londono commented to Rene DeLacova, an undercover agent of the Drug Enforcement Administration ("DEA"), that he was familiar with the location of the airstrip where the cocaine would be waiting (Tr. 132–33). Londono also said that while he was performing this particular task at the last minute as a favor to a friend, he had worked for an associate of one of the other conspirators (Tr. 134). After a delay of one day, Londono and Kelly took off in a small plane from an airport outside Panama City and flew, under Londono's instructions and in a manner to avoid observation, to a grass airstrip in Colombia (Tr. 131–35, 320–28). There, according to Kelly, Londono assisted in the loading of 111 kilograms of cocaine into the airplane (Tr. 331). Due to an unexpected shortage in the amount of cocaine, Londono promised Kelly that he would telephone back to Panama to alert the other conspirators that Kelly was not responsible for the discrepancy (Tr. 330). The evidence concerning Londono's participation in the conspiracy and importation scheme was limited to these alleged actions and statements.

The cocaine was eventually transported from Panama into the United States.

During a conference with the parties prior to instructing the jury, the Court heard extensive argument on whether to include a charge requiring the government to prove beyond a reasonable doubt that Londono knew the destination of the cocaine was to be the United States. The Court declined to give the charge requested by Londono (Tr. 927), but also declined the government's request to charge the jury that proof of such intent was not required (Tr. 930–34). The Court foresaw the possibility that the jury would inquire by note into the question of specific intent, but believed it was more prudent to see if the jury might decide the case without need to reach that point of law (Tr. 931–33). The Court realized that the legal question posed a "knotty problem" and hoped to avoid resolving it if the jury found other grounds on which to base its decision (Tr. 931–33).

During its deliberations, the jury did indeed request clarification on whether the government was required to prove that Londono knew the destination of the cocaine was the United States. The first time that the jury made such a request, the Court responded by sending into the jury room the portions of the jury charge which concerned the law of conspiracy to import cocaine and aiding and abetting the importation of cocaine (Tr. 1388–1402).[3] The jury subsequently sent another note to the Court again requesting clarification on the specific intent requirements of the law (Tr. 1445). After discussion with the parties (Tr. 1454–60), the Court provided the jury with a supplemental instruction that "the defendant need not have specific knowledge that the cocaine was to be imported into the United States" (Tr. 1463). The jury thereafter convicted Londono on both counts of the indictment.

**2.** References in the form "Tr." are to the transcript of the trial proceedings, which took place from February 6 to February 27, 1990.

**3.** Although counsel for defendants Londono and Cuevas and for the government consented to portions of the charge being sent into the jury, defendants' counsel consistently objected to the supplemental charge ultimately given by the Court.

## DISCUSSION

### A. *Rule 29(c) Motion*

1. Statutory Argument

Londono argues that to convict a defendant of conspiring to import cocaine in violation of 21 U.S.C. §§ 952(a), 960 and 963, the government must prove beyond a reasonable doubt that the defendant knew that the destination of the cocaine was to be the United States, and that the defendant possessed the specific intent to import the cocaine into the United States. Section 952(a) states in relevant part that "[i]t shall be unlawful ... to import into the United States from any place outside thereof, any controlled substance...." Section 963 states that "[a]ny person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those proscribed for the offense, the commission of which was the object of the attempt or conspiracy."

Londono emphasizes that 21 U.S.C. § 960 provides that any person who "knowingly or intentionally imports or exports a controlled substance" contrary to § 952 is punishable within certain limits. Londono claims that the "knowingly and intentionally" language of § 960 should be read to require that under § 952(a), the defendant knew and intended the destination of the narcotics to be the United States. Londono argues that, since § 952(a) describes the offense and § 960 the punishment, the two statutes must be read together, and interpreted to create a requirement that the government prove the defendant's specific intent with respect to the destination of the narcotics.

Rather than view the "into the United States" language of § 952(a) as an element of intent which must be proved, the government contends that the phrase is "jurisdictional" in that it reflects the geographical and situational limits to which the statute may be applied. For example, the language limits the ability of American courts to try and convict individuals acting outside the United States, or conspiring from within the United States to take action which has no effect within this country. Thus the government rejects Londono's claim that the "knowingly and intentionally" language of § 960 should be read to require a showing of specific intent as to the destination of the narcotics in prosecutions under § 952(a).

■ The Court believes that the language of § 952(a), whether or not read in light of § 960, does not require the government to prove that the defendant specifically intended the controlled substance to be imported into the United States. This interpretation of the text of § 952(a) is supported by current caselaw. *See United States v. Franchi–Forlando*, 838 F.2d 585 (1st Cir.1988); *United States v. Mejia–Lozano*, 829 F.2d 268 (1st Cir.1987). To punish a defendant under § 960, the government must certainly prove that the defendant intentionally and knowingly engaged in conduct which violated § 952(a). But the text of the statutes does not require more. In fact, as will be discussed more fully below, Londono's reading of the statutes would under many circumstances, including the case at bar, frustrate the aims of Congress in enacting the narcotics laws.

2. Caselaw

■ Londono points to a significant body of caselaw which interprets § 952(a) to require that the government prove specific intent on the part of a defendant to import narcotics into the United States. *See, e.g., United States v. Bollinger*, 796 F.2d 1394, 1404–05 (11th Cir.1986); *United States v. Wright–Barker*, 784 F.2d 161, 170 (3d Cir. 1986); *United States v. Marsh*, 747 F.2d 7, 12 (1st Cir.1984). With the exception of the Eleventh Circuit's holding in *Bollinger*, this body of caselaw concerns seizures of narcotics *outside* the borders of the United States. The "into the United States" language of § 952(a) indicates that the United States government has an interest in investigating and arresting schemes to import narcotics into the United States, even before the narcotics or participants reach American borders. Thus the statute permits prosecutions of individuals acting extra-territorially to bring about narcotics importations into the United States.

In *Wright–Barker, supra,* 784 F.2d 161, the U.S. Coast Guard seized a Panamanian freighter in the North Atlantic, approximately 200 miles off the coast of New Jersey. A search of the vessel uncovered 23 tons of marijuana concealed behind false walls in the cargo hold. The Third Circuit's ruling that a charge of conspiracy to violate § 952(a) required "individual intent to import and distribute marijuana in the United States" should be read in the context of an extra-territorial seizure of narcotics. *See id.* at 170. If such an intent could not be shown under the circumstances, or it was clear that the freighter was bound for another nation, the United States would have no interest in seizing the narcotics or prosecuting the participants.[4] *See also United States v. Quemener,* 789 F.2d 145, 156 (2d Cir.1986) (in the context of 21 U.S.C. § 955 which makes it unlawful to possess a controlled substance outside the United States with the intent to import it into the United States); *Marsh, supra,* 747 F.2d at 12.

■ The Court believes that the "into the United States" language was inserted into § 952 for jurisdictional reasons—more specifically, to insure that § 952 be applied only against those individuals engaged in conduct which has effects inside the United States. In the context of extra-territorial seizures of narcotics, courts have required the government to show jurisdiction by proving the specific intent of defendants to import the contraband into the United States. If such a jurisdictional nexus could not be shown, there would be no United States interest necessitating prosecution by the United States government in United States courts. The Court believes, however, that this body of caselaw should not be read to limit the use of § 952(a) in other contexts when United States interests are involved.

The First Circuit has ruled that, when narcotics are discovered in an airline passenger's luggage during a scheduled stopover in the United States between two foreign countries, the owner may be convicted under § 952(a) without the government having to prove that the individual intended to import the narcotics into the United States. *United States v. Franchi–Forlando,* 838 F.2d 585 (1st Cir.1988); *United States v. Mejia–Lozano,* 829 F.2d 268 (1st Cir.1987). The court has written that § 952(a) requires " 'little else but a showing that a defendant has knowingly brought a controlled substance with him from abroad into the United States.' " *Mejia–Lozano, supra,* 829 F.2d at 271 (*quoting United States v. McKenzie,* 818 F.2d 115, 118 (1st Cir.1987)). " 'Nothing in § 952(a) makes the accused's knowledge that she was landing on American soil, or her intent to do so, an element of the offense.' " *Franchi–Forlando, supra,* 838 F.2d at 587 (*quoting Mejia–Lozano, supra,* 829 F.2d at 271).

■ The Court agrees with the First Circuit in its interpretation of the required elements of § 952(a): the language of the statute simply does not require the government to prove the defendant's specific intent concerning the destination of narcotics. Under circumstances where the jurisdiction of an American court is at issue, the specific intent of an individual acting extraterritorially is a sufficient nexus on which to base the jurisdiction of the court. However, under circumstances where such a nexus is established in other ways, the showing of such intent is not required.[5]

---

**4.** In *United States v. Conroy,* 589 F.2d 1258 (5th Cir.1979), the U.S. Coast Guard intercepted a vessel in Haitian waters which was bound from Jamaica to the United States and contained marijuana. The Court noted: "Here, if it be assumed that [the defendant] indeed planned only to cooperate in the export of marijuana [from Jamaica] to *Canada,* there would be no criminal intent on his part cognizable in an American court and no federal interest involved.... Congress has shown no intention even by remote implication to punish a person

who in some other nation conspires against the laws of a third nation." *Id.* at 1270.

**5.** It is noteworthy that the First Circuit has implicitly made this distinction in its holdings in *Marsh, supra,* 747 F.2d 7, and *Mejia–Lozano, supra,* 829 F.2d 268. It follows from the reasoning of the First Circuit that, while the showing of specific intent as to the destination of the narcotics is necessary in extra-territorial seizure cases, such proof is not required in § 952(a)

Both the First Circuit "stopover cases" and the case at bar involve situations where narcotics were actually imported into the United States in clear violation of § 952(a). The Court believes that such circumstances create jurisdiction in American courts to try and convict individuals conspiring with and aiding and abetting the criminal groups responsible for the importation.

■ This holding is fully consistent with the laws of conspiracy and aiding and abetting which require specific intent to violate the underlying substantive crime. *See United States v. Aiello,* 864 F.2d 257, 263 (2d Cir.1988) (holding that conviction for aiding and abetting requires the government to prove the defendant's "specific intent that his act or omission bring about the underlying crime"); *United States v. Durham,* 825 F.2d 716, 719 (2d Cir.1987) (holding that conviction for conspiracy requires proof that the defendant specifically intended to violate the substantive crime). The Court has previously stated its belief that the showing of specific intent as to the destination of the narcotics is not required in § 952(a) cases where the narcotics reach the United States. Thus under 21 U.S.C. § 963 (the conspiracy statute) and 18 U.S.C. § 2 (the aiding and abetting statute), the defendant need not have a specific intent as to the destination of the narcotics. As long as the defendant conspired to carry out or aided and abetted a narcotics transaction which ultimately results in importation into the United States, he should be within the ambit of the federal narcotics laws.

Only one case cited by Londono is on all fours with the case at bar. In *United States v. Bollinger,* 796 F.2d 1394 (11th Cir.1986), the Eleventh Circuit held that the government must prove that the defendant knew that the narcotics were to be transported into the United States to uphold a conspiracy conviction under § 963. *Id.* at 1404–05. The defendant in question had flown an airplane containing cocaine from Bolivia to Honduras. His co-conspirators then transported the cocaine into the United States and distributed it. The court

cases when the narcotics ultimately reach the

held that sufficient circumstantial evidence had been presented to the jury to uphold a finding that the defendant knew the destination of the cocaine was the United States. *Id.* at 1405. The court ruled that knowledge of co-conspirators as to the destination of the narcotics was insufficient as a matter of law to hold the defendant to such knowledge. *Id. Bollinger* presents a similar situation to the case at bar: an individual convicted under federal law of conspiring to import narcotics into the United States when his only act was to fly an airplane, subsequently used to transport narcotics into the United States, between two foreign countries.

The Court firmly believes that the holding of the *Bollinger* court and the position advanced by defendant Londono in this case frustrate the purpose of the federal narcotics laws. The statutes in question "are part of a comprehensive scheme designed to suppress and, hopefully, ultimately terminate the illegal distribution of drugs from whatever source, foreign or domestic." *United States v. Palella,* 846 F.2d 977, 980 (5th Cir.1988). In *Wright–Barker,* the Third Circuit wrote that "Congress undoubtedly intended to prohibit conspiracies to import controlled substances into the United States, and intentions to distribute such contraband here, as part of its continuing effort to contain the evils caused on American soil by foreign as well as domestic suppliers of illegal narcotics." *Wright–Barker, supra,* 784 F.2d at 167. The federal narcotics laws must be employed to effectuate fully these purposes, within the limits proscribed by international and foreign law.

The First Circuit has put forward a compelling, common sense argument for not requiring proof of specific intent of destination in certain cases arising under § 952(a):

> On defendant's theory of the case, one could not be guilty of importation absent foreknowledge of the intended destination. Thus, a courier who knowingly possessed drugs yet blinded herself to the identity of the waystations along the route, could not be prosecuted for this

United States.

offense. To construe the importation statute in such a stilted manner would run at cross purposes with the discernible intent of the enacting Congress and would place an unrealistically heavy burden upon the government. We decline to adopt such a myopic view.

*Mejia–Lozano, supra,* 829 F.2d at 272. In the case at bar, defendant Londono's theory of the case would immunize from prosecution in American courts individuals who are integral parts of international drug trafficking conspiracies but who conveniently blind themselves to the destination of the narcotics, and who do not demonstrate a specific intent to send the contraband into the United States. Given the structure of international narcotics organizations, this result would substantially hamper the stated policy and resolve of the United States government to interdict and to deter the importation of narcotic drugs into our country. The government must be able to prosecute the whole of a narcotics trafficking conspiracy which threatens national interests.

### 3. Sufficiency of the Evidence

■ As previously stated, the Court must view the evidence in a light most favorable to the government and must credit every inference that could have been drawn in the government's favor, in deciding a sufficiency of the evidence motion under Fed.R.Crim.P. 29(c). *Villegas, supra,* 899 F.2d at 1338–39; *Gurary, supra,* 860 F.2d at 523–24; *Chang An–Lo, supra,* 851 F.2d at 554. Given the Court's ruling on the elements of the crimes charged, and the evidence already discussed, *supra,* the Court denies Londono's Rule 29(c) motion. Indeed, the Second Circuit has observed that "[t]he weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." *Villegas, supra,* 899 F.2d at 1339. Applying these standards to the instant case, there is sufficient evidence to find beyond a reasonable doubt that Londono conspired to import cocaine into the United States, and aided and abetted in the importation of cocaine into the United States.

### B. Rule 33 Motion

■ Londono also moves for a new trial under Fed.R.Crim.P. 33, which gives a district court discretion to grant a defendant a new trial "if required in the interest of justice." When judging the sufficiency of evidence pursuant to a Rule 33 motion, as opposed to a Rule 29(c) motion, the Court may weigh the evidence and consider the credibility of the witnesses in deciding whether the defendant's conviction was in any way unjust or improper. *United States v. Valentine,* 644 F.Supp. 818, 821 (S.D.N.Y.1986); Wright & Miller, *Federal Practice and Procedure: Criminal,* § 553, at 245–48. Even under this standard, however, Londono's conviction must be upheld. Though the Court did not find fully credible the testimony of certain of the government witnesses—particularly with regard to Londono's purported activities after landing the plane at the airstrip in Colombia—the Court must deny Londono's request for a new trial, based on the unimpeached testimony concerning his flying the plane to the airstrip where the cocaine was to be located and the inferences that could be drawn therefrom.

### C. Rule 34 Motion

Londono moves to arrest judgment under Fed.R.Crim.P. 34. The text of Rule 34 requires arrest of judgment "if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." Based on the ruling contained in this Order and Opinion, the Court finds that it has jurisdiction over the acts of Londono pursuant to the Court's interpretation of the federal narcotics statutes. Londono's motion to arrest judgment is denied.

### CONCLUSION

Defendant Londono's motions pursuant to Fed.R.Crim.P. 29(c), 33 and 34 are denied.

SO ORDERED.