**UNITED STATES of America,**

v.

**Kenneth VALENTINE, Defendant.**

**No. S 86 Cr. 375 (RWS).**

United States District Court,
S.D. New York.

Sept. 23, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Thomas E. Moseley Asst. U.S. Atty., New York City, for U.S.

Thomas Fitzpatrick, New York City, for defendant.

SWEET, District Judge.

Defendant Kenneth Valentine ("Valentine") has moved this court pursuant to Fed.R.Cr.P. 29(c) to set aside the verdict of guilty rendered at trial and to enter a judgment of acquittal. Alternatively, Valentine has moved for a new trial under Fed.R. Cr.P. 33. For the reasons given below, the motions are denied.

**Prior Proceedings**

Valentine, a former securities broker with First Jersey Securities, Inc. ("First Jersey"), was indicted for committing perjury during questioning by a federal grand

**820**

jury in violation of 18 U.S.C. § 1623.[1] The grand jury was investigating improper campaign contributions to the 1982 Jeffrey Bell for Senate Campaign (the "Campaign"). Approximately fifteen securities brokers employed by First Jersey were subpoenaed to testify regarding their contributions of $1,000 each to the Campaign. Valentine was questioned on two occasions regarding his contribution. Three of his answers were later attacked as perjurious and each answer constituted the basis for one count of a three-count indictment. Valentine's answers were as follows:

Q. And the money that you gave to the Jeffrey Bell for Senate Campaign was your personal funds?

A. Yes, it was.

Q. Did your branch manager give you the thousand dollars to make that contribution to the Bell for Senate Campaign?

A. No.

Q. Did he loan you the thousand dollars to make the contribution to the Jeffrey Bell for Senate Campaign?

A. No, he did not.

By pretrial motion, Valentine objected to testimony anticipated to be given by five of his fellow brokers from First Jersey, that each broker was called into the office of the branch manager, Jamie Spangler ("Spangler"), asked to contribute $1,000 to the Campaign, and told that Spangler would "loan" him the $1,000. Despite the hearsay objection, this court ruled that the evidence was admissible as a "verbal act" and as an exception under Fed.R.Evid. 803(3) to show Spangler's "intent, plan [and] motive" in transferring the money to each broker.

At trial, in addition to this evidence, there was testimony by the director of the Campaign as to the records kept of contributions, and by an investigator with the Federal Bureau of Investigation who testified as to the course of the investigation into Valentine's involvement with the Campaign. Copies of Valentine's check to the Campaign, Spangler's check to Valentine, and checks and letters documenting all five of the testifying brokers' and nine non-testifying brokers' transactions with Spangler and the Campaign were admitted.

At the close of the prosecution's case, Valentine made a motion pursuant to Fed. R.Cr.P. 29(a) for a judgment of acquittal. A judgment of acquittal was entered by the court on Count Two of the indictment only. The court's decision was based on the insufficiency of the evidence presented to prove that Valentine was "given" the money to make his contribution.

The defense presented no evidence. Valentine was acquitted on Count One and found guilty of perjury on the Third Count of the indictment.

**The Issues**

Valentine's motions under Fed.R.Cr.P. 29(c) and 33 raise five major issues: 1) whether the brokers' hearsay testimony was properly admitted under Fed.R.Evid. 803(3); 2) whether the admission of the brokers' testimony was so prejudicial as to outweigh its probative value under Fed.R. Evid. 403; 4) whether the answer for which Valentine was convicted was literally true; 4) whether the entry of a judgment of acquittal on Count Two of the indictment and submission of Counts One and Three alone to the jury violated Valentine's constitutional or other rights; and 5) sufficiency of the evidence.

The court must abide by very strict standards in determining both motions before it. On a motion to acquit, the court must give "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984) (quoting *Curley v. United States*, 160 F.2d 229, 232–33 (D.C.Cir.), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947)). All inferences must be resolved in favor of the prosecution, and the evidence must be viewed in a similarly

---

**1.** The statute reads, in pertinent part: "Whoever under oath ... in any proceeding before ... [a] grand jury of the United States knowingly makes any false material declaration" shall be fined or imprisoned or both. 18 U.S.C. § 1623.

favorable light. *Id.* On a motion for a new trial, the court has broader powers and may weigh the evidence and consider the credibility of witnesses. Wright, Federal Practice and Procedure: Criminal 2d § 553 (1982). Nevertheless, motions for a new trial are "not favored and should be granted only with great caution." *United States v. Lombardozzi,* 343 F.2d 127 (2d Cir.), *cert. denied,* 381 U.S. 938, 85 S.Ct. 1771, 14 L.Ed.2d 702 (1965) (quoting *United States v. Costello,* 255 F.2d 876 (2d Cir.), *cert. denied,* 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958) ).

The trial was conducted by skilled counsel, both for the government and the defense, and in some fashion unknown to this court is part of a mosaic being fashioned by the prosecution arising out of the Campaign. The issues presented are close and in the context of this prosecution difficult and troubling.

## I. Dealings Between Spangler and Other Brokers

Valentine contends that this court's ruling on the admissibility of the brokers' testimony and, indeed, on the admissibility of any evidence of other brokers' transactions with Spangler was erroneous. As an initial matter, this court must determine whether evidence of other brokers' dealings with Spangler was relevant under Fed. R.Evid. 401.

Fed.R.Evid. 401 defines relevant evidence as that "having any tendency to make the existence of any fact ... more probable or less probable than it would be without the evidence." The government was entitled to introduce this evidence to show that Spangler made a loan to Valentine as part of a larger scheme to persuade his employees to contribute to the Campaign, loaning them the money if necessary. As proof of that scheme, the government introduced the testimony of five bro-

kers, checks from Spangler to the five brokers and nine other checks from brokers to the Campaign, records of the Campaign, a check from Spangler to Valentine and one from Valentine to the Campaign. Even though relevance is thus conditioned on a finding of fact, whether a scheme actually existed, the evidence introduced by the government is "sufficient to support a finding" that there was indeed such a scheme. Fed.R.Evid. 104(b). Furthermore, this evidence is relevant to show the atmosphere around the office at the time the contributions were being made, in order to show that Valentine would have remembered the circumstances of his contribution.

Other claims of error by Valentine rest on the admission of the five brokers' testimony that Spangler told them that the money he was giving them was a loan. Under Fed.R.Evid. 803(3), however, Spangler's statements are admissible as an exception to the hearsay rule to show Spangler's "plan" to loan his employees money to contribute to the Campaign. Spangler's statements are admissible on other grounds as well. When non-verbal conduct, like the transfer of money, is ambiguous, contemporaneous words which characterize the transactions are not hearsay under Fed.R.Evid. 801. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 801(c)[01] at 801–75 through 801–76 & n. 16; *see also United States v. Romano,* 684 F.2d 1057, 1066 (2d Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375–376, 74 L.Ed.2d 509 (1982) ("an utterance which was contemporaneous with an independently admissible nonverbal act ... and which relates to that act and throws some light upon it" is admissible). Since the checks from Spangler to the brokers are independently admissible, Spangler's statements are not hearsay and are, therefore, admissible.[2]

---

**2.** Regardless of whether the brokers' testimony of Spangler's plan is classified as non-hearsay or an exception to the hearsay rule under Fed.R. Evid. 803(3), the Confrontation Clause of the Sixth Amendment was not violated by its admission. Use in testimony of a third person's non-

hearsay statements does not render that person a witness against the accused within the meaning of the Confrontation Clause. *See United States v. Jackson,* 588 F.2d 1046, 1049–50 n. 4 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). Fed.R.Evid. 803(3)

The evidence of Spangler's dealings with other brokers raises the question as to whether or not "its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. That prejudice is alleged to arise from improper use of the Spangler "hearsay" to prove its truth rather than Spangler's intent, and the use of the brokers' testimony of their meetings with Spangler to prove that Valentine must have remembered the loan because others remembered it.

To determine the probative value of certain evidence under Rule 403, a court must consider the evidence's strength in proving an issue in the case and the proponent's need for the evidence. *United States v. Grassi*, 602 F.2d 1192, 1195 (5th Cir.1979), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3401, 65 L.Ed.2d 1131 (1980). The ultimate goal, of course, is to ensure the defendant a fair trial. *Id.*

■ Valentine argues that the probative value of the brokers' testimony is undermined by the defense's repeated offer to stipulate that Valentine did receive a loan from Spangler. The prosecution, however, was not obliged to accept a stipulation to a component of their case. *United States v. James*, 609 F.2d 36, 50 (2d Cir.1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). "Stipulations as to testimony are frequently not as effective in communicating facts to the jury as in-court testimony, and the government has a large measure of discretion in deciding whether to accept or reject an offer to stipulate." *United States v. Washington*, 705 F.2d 489 (D.C.Cir.1983).

■ Refusing an offer to stipulate does not, *per se*, render relevant testimony un-

necessary to the prosecution and prejudicial under Rule 403. *United States v. Grassi, supra*, 602 F.2d at 1197. Prejudice is not demonstrated by an adverse impact on the defense's case but rather is defined as "an undue tendency to suggest decision on an improper basis." Fed.R.Evid. 403 Advisory Committee note. Thus, any additional inferences that the jury may have drawn from the testimony, that would not have been included in the stipulation, are prejudicial only insofar as they suggested decision on an improper basis.

■ The brokers' testimony offered in lieu of the stipulation had significant probative value, not only as to the subject matter of the stipulation, that is, whether Spangler made Valentine a loan, but also as to whether Valentine committed perjury when he denied having received a loan "to make the contribution" to the Campaign. As part of this latter showing, the evidence was probative as to both the purpose of the loan and to whether or not Valentine remembered the loan when he testified before the grand jury years later. From the testimony of each of the five brokers, the jury could draw an inference as to what transpired between Spangler and Valentine. Furthermore, the testimony was the only way the jury could learn of the atmosphere in the office at the time the contributions were made, a factor in determining whether or not Valentine remembered receiving a loan. Spangler's "verbal act" of identifying the money as a loan was part of the prosecution's use of the evidence to show the entirety of each transaction. Since Valentine and Spangler did not testify, there was no other way for the jury to infer what occurred in the meeting.[3]

statements have long been seen as having indicia of reliability sufficient to avoid Confrontation Clause issues. *See Mutual Life Ins. Co. v. Hilmon*, 145 U.S. 285, 295, 12 S.Ct. 909, 912, 36 L.Ed. 706 (1892). The rule itself "proceeds upon the theory that under appropriate circumstances a hearsay statement is inherently superior to, or at least as good as, testimony given by the declarant in person at trial, thus justifying his nonproduction even though he may be avail-

able." Preliminary draft of March, 1969 Rule 8–03(b), 46 F.R.D. 161, 350 (1969).

3. Contrary to the position of the prosecution, the defense's use of the brokers' testimony on cross-examination and in summation is irrelevant to a finding of prejudice under Rule 403. Once admitted, the testimony could be used by the defense for whatever tactical reasons it chose. It did not thereby forgo a later challenge under Rule 403.

The probative value of the brokers' testimony outweighs any prejudice that may have resulted to the defendant. Contrary to Valentine's contention, it was proper to use Spangler's statements characterizing the transfer of money as a loan to show that the transfer actually was a loan since this was a "verbal act" and not hearsay. *See supra.* Even if Spangler's statements were hearsay and allowed in only under Rule 803(3), there was sufficient evidence, without use of this testimony, to infer that the $1,000 check to Valentine was a loan. The government presented evidence of fourteen similar transactions between Spangler and brokers, all of which had the earmarks of a loan. As a matter of law, this court cannot conclude that the jury misused the evidence before it. Similarly, the jury's possible use of the testimony to conclude that Valentine must remember the transaction as a loan because five other brokers did is not fatally prejudicial. The jury was instructed to use the brokers' testimony with respect to their recollection of events for the sole purpose of assessing the brokers' credibility and the weight and effect of their testimony. Tr. at 186. Given the probative value of the brokers' testimony and the inability of the suggested stipulation to cover all that the prosecution was entitled to put before the jury, the prosecution was within its discretion in refusing to stipulate. The testimony will not be excluded under Rule 403.

## II. The "Literal Truth" Defense

Valentine argues that his negative reply to the grand jury question, "Did he loan you the $1,000 to make the contribution to the Jeffrey Bell for Senate Campaign?" was literally true as a matter of law, and thus the jury's verdict cannot stand. The jury was instructed on the literal truth defense but not as to Valentine's claim that the Uniform Commercial Code (the "UCC") controls the issue.

The defense of "literal truth" to a perjury allegation is based on the Supreme Court's decision in *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). The defendant, Bronston, gave testimony in his company's bankruptcy hearing. The specific questioning was as follows:

Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?

A. No sir.

Q. Have *you* ever?

A. *The company* had an account there for about six months, in Zurich.

409 U.S. at 354, 93 S.Ct. at 597 (emphasis supplied).

This answer was unresponsive, ambiguous and tended to be misleading. However, the answer was literally true because Bronston only gave a reply as to the company's accounts, not his own. The court held that any problems arising from an answer of this type are not to be resolved by prosecution for perjury but rather through precise and probing questioning, thus placing the burden on the questioner to prevent evasion on the part of the witness. *Id.* at 358–62, 93 S.Ct. at 599–601. A perjury conviction then cannot rest on a literally true response. *Id.*

Valentine claims that the $1,000 check he wrote to the campaign was drawn on his personal funds and not out of the proceeds he received from Spangler's $1,000 check. By making reference to the provisions of Article Three of the UCC as adopted in New York, Valentine argues that although Spangler's check was dated May 16, 1982 and Valentine's check to the campaign was dated May 18, 1982, when the check to the campaign was debited against Valentine's account, the check from Spangler had not yet been credited. Thus, the argument goes, the order of debits and credits makes Valentine's answer literally true—he was not loaned the money "to make the contribution" because he had already made it. If anything, Valentine was reimbursed later when Spangler's check was credited to his account.

However, the UCC is not to be substituted for what an individual *meant* by his testimony before a grand jury. What is relevant in a perjury determination is the "natural meaning" of the words used,

824

*United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976), and not what the relevant commercial law is.

> A jury is best equipped to determine the meaning that a defendant assigns to a specific question.... How a defendant interprets a question obviously is not viewed subjectively, as that would compel the jury to accept as conclusive the meaning a defendant alleges he gave to the stated question, and no perjury prosecutions would result in convictions.

*United States v. Lighte*, 782 F.2d 367 (2d Cir.1986). The jury, in fulfilling its role of providing objectivity, was entitled to find that Valentine, by his answer, was denying the receipt of $1,000 to offset his $1,000 contribution. Given the inapplicability of the UCC in guiding the jury's determinations and the absence of any further argument in support of "literal truth," the jury's verdict will remain undisturbed.

### III. The Indictment

Valentine next argues that a judgment of acquittal should be entered because the prosecution's evidence regarding Count Two and Count Three of the indictment was inherently contradictory.[4] Valentine alleges that the "gift theory" of Count Two and the "loan theory" of Count Three are mutually exclusive, and thus a reasonable jury could not convict under either. Aside from proposing a constitutional argument as to the right to be informed of the nature and cause of the accusation, Valentine offers no authority in support of this argument. Therefore, the circumstances surrounding the role of the indictment at trial will be examined in their entirety.

4. Valentine also argues that his statements before the grand jury were not "material" as required by 18 U.S.C. § 1623. "Whether or not a false declaration is material to a grand jury investigation is a question of law that must be determined by the court, not the jury." *United States v. Moon*, 718 F.2d 1210, 1237 (2d Cir. 1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). Materiality will be found if the question asked is one that, if truthfully answered, could aid the grand jury inquiry. *Id.* As determined at trial, the grand

On Valentine's motion under Fed.R.Cr.P. 29 for a judgment of acquittal, Count Two, relating to whether Valentine was "given" the $1,000, was dismissed from the indictment. Only the first and third counts were submitted to the jury. Because this motion was made at the end of the prosecution's case, evidence regarding all three counts had already been presented to the jury.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The Sixth Amendment further affords criminal defendants the right "to be informed of the nature and cause of the accusation." The principles that have developed to ensure these constitutional protections are essentially two-fold. First, an indictment may not be amended so as to broaden the criminal charge except upon resubmission to the grand jury. *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). Second, to satisfy the Constitution, an indictment must:

> 1) charge all of the essential facts of the criminal offense,
>
> 2) inform the defendant of the offense charged with sufficient clarity so that he will not be misled while preparing his defense, and
>
> 3) protect the defendant against another prosecution for the same offense.

*U.S. ex rel Harris v. Illinois*, 457 F.2d 191 (7th Cir.), *cert. denied*, 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106 (1972).

Withdrawing or ignoring a count of an indictment for insufficiency of evi-

jury was investigating violations of federal election law (18 U.S.C. § 371; 2 U.S.C. § 441(a) & (f) ) prohibiting contributions made in the name of another and contributions totaling more than a certain amount. If Valentine had answered affirmatively that he had received a loan from his employer to make the contribution, the grand jury could have used this information to further inquire into an employer's improper inducement to employees to make contributions to a campaign.

dence or other reason does not result in an unconstitutional amendment of the indictment. *See United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *see also Salinger v. United States*, 272 U.S. 542, 548–49, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926) (withdrawal of one offense from the jury's consideration does not constitute a forbidden amendment). The judgment of acquittal entered on Count Two withdrawing it from the jury's consideration does not violate the Constitution. Additionally, when Counts One and Three were submitted to the jury, the court instructed the jury not to speculate on the absence of Count Two, as is routinely done when part of an indictment is withdrawn. Tr. at 399.

██ Valentine claims that the withdrawal of Count Two impeded or prejudiced his defense by "failing to fully apprise him of the charge against him." *Stewart v. United States*, 395 F.2d 484 (8th Cir.1968). However, he knew from the beginning that he would have to defend against three specific allegations of perjury. Withdrawing one count creates no surprise or hardship as to Valentine's defense of the remaining counts. The right to a grand jury indictment is protected "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment." *United States v. Miller, supra*, 105 S.Ct. at 1815. Count Three, on which Valentine was convicted, was clearly set out in the grand jury's indictment, and the withdrawal of Count Two had no constitutionally cognizable effect upon it.

Valentine's remaining attack on the indictment is based on an alleged inconsistency between the Count Two and Count Three evidence presented at trial. Upon closer examination, however, this court concludes that no fatal inconsistency exists.

██ The evidence submitted in support of Count Two went to show that Valentine was "given" the $1,000 and, therefore, lied when he denied being "given" the money. The evidence on Count Three went to prove that Valentine was loaned the $1,000 and therefore lied when he denied being loaned the money. By submitting evidence of both a "gift" and a "loan" but only giving the jury the loan statement to decide, it became possible for the jury to use the Count Two evidence if it so chose, to decide on Count Three that Valentine had not received a loan but rather a gift. Obviously, the jury chose not to credit the "gift" evidence as it convicted Valentine of perjuring himself when he denied receiving a loan. Rather than provide inconsistency of proof and prejudice to Valentine, the dismissal of Count Two pursuant to his motion served, potentially, to help him. There is no fatal flaw in the indictment, and no inconsistency in the evidence submitted to the jury with respect to Count Three.[5]

## IV. Sufficiency of the Evidence

Mindful of the strict standards it is required to observe, the court finds that the evidence is sufficient to support the jury's verdict. Valentine's conviction must rest on evidence from which the jury could conclude that Valentine received a loan from Spangler to make a $1,000 Campaign contribution and evidence from which the jury could conclude that Valentine remembered receiving such a loan.

██ The jury was presented with evidence of Spangler's plan to obtain Campaign contributions from his employees: testimony by five of Valentine's co-workers that they received loans from Spangler enabling them to contribute, checks from Spangler to the five testifying brokers and nine non-testifying brokers and their checks to the Campaign, Valentine's check to the Campaign and Spangler's check to Valentine.

5. This court will not exercise its supervisory power to order suppression of Valentine's grand jury testimony because of a failure to warn him that he was a target. Since Valentine has no constitutional right to such a warning, *see Unit-* ed States v. James, 609 F.2d 36 (2d Cir.1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980), this court was not required to suppress the testimony at trial.

Evidence going to prove that Valentine remembered receiving a loan from Spangler was provided by the five brokers' testimony as to the atmosphere around the office at the time of the contributions and the orderly procession in which Spangler approached each broker.

The court cannot find that "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Mariani, supra,* 725 F.2d at 865.

Given the absence of fatal error from Valentine's trial and the evidence's support of the jury verdict, the court will not grant a new trial in the interests of justice. Valentine's motions are denied.

IT IS SO ORDERED.