**UNITED STATES of America, Appellee,**

v.

**Joseph MACCINI, Defendant, Appellant.**

**No. 82–1043.**

United States Court of Appeals,
First Circuit.

Argued June 9, 1983.

Decided Nov. 10, 1983.

---

Jack I. Zalkind, Chestnut Hill, Mass., with whom Ellen Y. Suni, Boston, Mass., was on brief, for defendant, appellant.

Douglas P. Woodlock, Sp. Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and TORRUELLA,[*] District Judge.

TORRUELLA, District Judge.

In this case appellant Joseph Maccini (Maccini) appeals from guilty verdicts against him in a two count indictment charging a conspiracy to defraud the United States[1] and the submission of a false statement.[2] These charges arise out of his alleged participation in a scheme which involved an electrical modernization program at a low income housing project for the Somerville, Massachusetts Housing Authority (S.H.A.), which is funded by the U.S. Department of Housing and Urban Development (H.U.D.).

The case against Maccini is the last of three indictments[3] charging various local and federal officials and several private contractors with fraudulent underperformance and diversion of funds in connection with two S.H.A. contracts, performance of which was effectuated from 1975 through 1977: (1) The S.H.A.'s Mystic View Project (Mystic View contract), a $512,000 electrical modernization program and (2) the S.H.A.'s Prospect Hill Towers project (Prospect Hill contract). Only the Mystic View contract is directly involved in this case.

Appellant raises four errors on appeal: (1) that the Government in its opening statement improperly commented upon "defendant's right not to put on a defense," (2) that his right of cross-examination was unduly impinged upon by the trial judge's limitations, (3) that the court below failed to give appropriate cautionary instructions to the jury regarding a co-conspirator's guilty plea, and (4) that the prosecutor's rebuttal argument was intentionally improper, to the point of constituting prosecutorial misconduct thus warranting the reversal of appellant's conviction and dismissal of the charges against him.

## Opening Statements

■ Appellant objects to that part of the Government's opening statement which came towards the end of the Government's allocution, after various interruptions by defense counsel objections.[4]

---

* Of the District of Puerto Rico, sitting by designation.

1. 18 U.S.C. § 371.

2. 18 U.S.C. §§ 1001, 1002.

3. In *United States v. Gray*, Crim. No. 80–24–N (D.Mass. June 27, 1980, amended Oct. 7, 1980 and Oct. 20, 1980), William P. Gray, Executive Director of S.H.A., Robert Goodoak, the independent architect-engineer for S.H.A., John Stow (Stow), President of Allied Weatherproofing Co., Inc., and Stephen Densmore (Densmore), President of Masdec Construction, the contractor of the Mystic View contract were variously charged with the fraudulent practices. They were separately tried. Dens-

more pled guilty to conspiracy, 18 U.S.C. § 371, and the filing of false statements, 18 U.S.C. § 1001, and pursuant to the plea agreement in which the Government agreed to recommend a two-year probationary sentence and dismiss the recurring counts against him, promised to cooperate fully in further federal investigations. Stow's charges were limited to his activities related to the Prospect Hill brick contract. Densmore was a Government witness against Stow at his trial wherein Stow was found not guilty.

The other case, *United States v. Kleftis*, Crim. No. 80–376–Mc(1) (D.Mass. March 9, 1981), is not directly related to the matters presently before us.

4. Seven objections.

The objected statement was:

The Government will present the testimony and the documents and of course Mr. Maccini will have an opportunity to present any evidence . . . .

Defense counsel objected before this statement was finished and a bench conference followed. Thereafter the trial judge gave a curative instruction to the jury, after having overruled the defense's motion for mistrial.

Although the cited statement by the Government's representative is not to be encouraged, an allegation that it is grounds for mistrial as a comment on appellant's Fifth Amendment rights or the Government's burden of proof, is "an attempt to balloon an innocent statement out of all proportion to its content and intent." *Taylor v. United States,* 390 F.2d 278, 281 (8th Cir.1968). This statement is in fact similar to an instruction which is commonly given by the trial judge shortly after the jury is empanelled for the purpose of explaining the order of proof. *See* 1 Devitt and Blackmar, *Federal Jury Practice and Instructions*

§ 10.01 (1977); *United States v. Attaway,* 449 F.2d 309 (5th Cir.1971). Notwithstanding that the U.S. Attorney is not the proper party to instruct the jury on these matters, it does not follow that this transgression, particularly under the facts of the present case, automatically leads to a mistrial. To begin with, appellant concedes that the statement falls short of violating the standard set forth in *United States v. Flannery,* 451 F.2d 880 (1st Cir.1971), for automatic reversal,[5] as the language does not "naturally and necessarily" comment on an accused's failure to testify. *United States v. Dansker,* 537 F.2d 40, 63 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) (quoting *United States v. Chaney,* 446 F.2d 571, 576 (3d Cir.1971)). Most important, however, is the fact that the trial judge dispelled any possible doubts about this matter by immediate and thorough instructions to the jury, thus curing any prejudice that may have been caused by the Government's unnecessary comment.[6]

5. "[W]hen it is apparent on the record that there was no one other than himself whom the defendant could have called to contradict the testimony, we shall not endeavor to weigh prejudice, but shall rule it prejudicial as a matter of law, with a single exception. If the court interrupts the argument, instructs the jury fully on the defendant's constitutional right not to testify and the jury's obligation not to draw unfavorable inferences and, in addition, states to the jury that the U.S. Attorney was guilty of misconduct, we may find no prejudice; otherwise we will reverse." *United States v. Flannery,* 451 F.2d at 882.

6. The following instructions were given:

THE COURT: Now, I interrupted the opening statement of the Government counsel which was nearing its conclusion to give you an instruction on the law so that there could not be any misinterpretation of the statement by Mr. Woodlock, the prosecution attorney. He said, and was interrupted in mid-sentence quite appropriately by defense counsel Zalkind, that Mr. Maccini would have an opportunity to present evidence. And at that point there was a proper objection, and that objection is sustained by the Court.

But I take this occasion to state to the jury one of the fundamental principles of American jurisprudence, which is that the burden is upon the Government in a criminal case to prove every essential element of every alleged offense beyond a reasonable doubt. That is, the burden is upon the Government to prove guilt beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. There's no burden on Mr. Maccini to produce any evidence. In every case, and I have no doubt in this case as well, the defendant will be presenting evidence by way of cross-examination of Government witnesses. The defendant relies upon evidence elicited by cross-examination. So that the opportunity that Mr. Maccini will have, as the defendant in every case has, to bring out certain facts by way of cross-examination and by way of argument and analysis to the jury, does not in any way imply a necessity on the part of the defendant to produce any evidence. That's fundamental. There is no need of the defendant to produce any evidence. There is no need in law for him to take advantage of the opportunity. He doesn't have to put a single question on cross-examination if counsel decides not to do so. The bottom line is that the burden is on the Government to prove guilt beyond a reasonable doubt. There is no burden on the defendant to prove his innocence, and there's no burden on the defendant to come forward with a single item of evidence or testimony.

Now, that's a fundamental principle of law, and nothing that the Government lawyer said

The trial court did not err by denial of the motion for mistrial.

*The Trial Judge's Control of the Trial*

■ Appellant next complains that the trial judge impermissibly infringed upon his right to confrontation by limiting defense counsel's cross-examination of the key Government witness, Densmore, and by allowing the prosecutor to interrupt counsel's examination to allow the reading of additional portions of Densmore's prior statement. Defense counsel attempted to impeach Densmore's credibility using his testimony in a prior case, *United States v. Stow*, Crim. No. 80–24–N (D.Mass. June 10, 1980). He contended that this transcript contained inconsistent statements concerning the identities of six persons involved in the S.H.A. scheme. The prosecutor objected because the *Stow* case concerned solely the brick contract and not the electrical contract, thus arguing that Densmore had not fully explained all parts of the fraudulent scheme as regarded the electrical contract. The trial judge resolved the controversy by allowing each party to read as much of the *Stow* transcript as they thought necessary. Defense counsel claims that this procedure was erroneous and is sufficient to require reversal. We disagree. Appellant admits that he had ample opportunity to present Densmore as an untruthful witness through other impeaching questions. Thus, this is not a circumstance as in *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980), or *United States v. Tracey*, 675 F.2d 433, 436, 439 (1st Cir.1982), where an entire line of inquiry was foreclosed. In *Fortes* we said: "The court need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture has already been developed." 619 F.2d at 118.[7] In fact, the limitation imposed by the trial court took place after twice allowing defense counsel to read the parts of the transcript he was interested in calling to the attention of the jury, while in contrast the Government read theirs only once without the benefit of rehabilitative redirect. The trial judge's discretion as to the scope and extent of the cross-examination was well exercised. *United States v. Brown*, 546 F.2d 166, 169 (5th Cir.1977).

■ Appellant next objects to the trial judge's requirement that additional portions of the *Stow* testimony, and of Densmore's testimony to a grand jury, be read to the jury contemporaneously.[8] It is acknowledged that the trial judge has ample authority to impose a requirement of supplementation. Appellant contends, however, that this practice is only permitted on redirect. This objection need not detain us unduly. Rule 106 of the Federal Rules of Evidence states on its face:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him *at any time* to introduce any other part or any other writing or recorded statement which ought in fairness be considered contemporaneously with it.

(emphasis supplied).

The legislative history of this rule leaves the question as to when supplementation

---

should leave any doubt in your mind as to that fundamental principle or dilute the importance of those basic rules.

That concludes the Court's comment on that particular statement by Mr. Woodlock. And, please resume your opening statement.

**7.** "Once the constitutional threshold is satisfied, a trial court may exclude certain of the defendant's questions on cross-examination so as to restrict repetitive cross-examination and conjectural testimony. Such a limitation on cross-examination is not a denial of the constitutionally protected right of confrontation; rather it is a legitimate evidentiary ruling en-

trusted to the discretion of the trial judge. *Vanetzian v. Hall*, 433 F.Supp. 960, 963 (D.Mass.), *application for certificate of probable cause denied*, 562 F.2d 88 (1st Cir.1977)". *Niziolek v. Ashe*, 694 F.2d 282, 289 (1st Cir. 1982).

**8.** The objection as to the *Stow* testimony was not made in the trial court, the one as to the testimony before the grand jury was made during the trial. The former objection cannot be considered for the first time on appeal. *United States v. Richardson*, 588 F.2d 1235, 1241 (9th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

will be permitted to the discretion of the trial judge. *Hearings on the Proposed Rules of Evidence before the Subcomm. on Criminal Justice of the House Comm. on the Judiciary,* 93d Cong., 1st Sess.Ser. 2, 55–56 (1973).

The trial judge did not abuse his discretion.

*Co-Conspirator Densmore's Guilty Plea*

█ During trial, defense counsel attempted to impeach co-conspirator Densmore with the fact that he pled guilty in the case against him. After this matter was brought out on cross-examination by defense counsel, the prosecutor requested that the judge explain the "purpose of Rule 11 allocution" to the jury. The trial judge proceeded to explain the guilty plea proceeding, after which defense counsel failed to make any objection or request any additional instruction. It is now claimed that plain error was committed.

The trial judge instructed the jury as follows:

> Even though a man pleads guilty to an offense as charged in the indictment, the Court may not impose a judgment of conviction on the basis of a plea unless there has been a corpus delicti proved, so after the plea is taken, the Court then must comply with the rule that requires that it be satisfied that there is substantial evidence of a crime having been committed by somebody.

> The exact provision of the rule is that the Court may not enter a judgment upon a guilty plea without making such inquiry as shall satisfy it that there is a factual basis for the plea. Factual basis is sort of a rough equivalent of corpus delicti. I just quoted the rule about having to find a factual basis for a plea of guilty.

> So the way you go about it is to ask the Government lawyer to state the essence of the charge, and then to file, if there are some corroborative documents, like in a bank—I mean like in a check case or forgery case, something like that, the Court looks at the documents and then asks the defendant if he disagrees with or

wants to change in any way the statement of the essence of the charge made by the prosecuting lawyer.

> If the defendant says that he agrees with the statement by the Government lawyer, and if, from other documents, the Court is satisfied that there is a factual basis for the guilty plea, the Court makes that finding and then sets the case down for sentencing, usually three weeks from that time.

> So that is a description of what was happening on this occasion.

> Please resume.

No allusion was made to Maccini in that explanation, which in fact substantially follows the explanation required under Rule 11. *United States v. Fortes,* 619 F.2d at 124; *United States v. St. Germain,* 680 F.2d 874, 877 (1st Cir.1982). No error was committed by the trial judge.

*Closing Argument*

█ Appellant's most significant argument concerns the prosecutor's rebuttal argument in which he stated to the jury:

> Ladies and gentlemen, Mr. Maccini's defense requires that you aid and abet him now in doing what he did to Steve Densmore and Nancy Scotti before . . . .

Later he went on to say:

> It would be the final irony if that man [Maccini] having orchestrated lies in the form of concealing his assets, were finally able to sell the story that they [Densmore and Scotti] did it.

Appellant's counsel objected after the first part of the argument to which the court said: "Let's wait and see. It is argument." After the second part of the argument there was a conference at the sidebar wherein defense counsel indicated that he wanted a copy of the rebuttal argument for the next day because at that time he would ask the court to declare a mistrial. The following morning, the trial judge, after reviewing the rebuttal as presented in the transcript, forcefully took issue with the Government's statements and gave instructions to the jury in an attempt to cure any prejudice caused by the Government's state-

ments. Appellant claims that these two statements, whether taken separately or together, warrant reversal and dismissal because they were intentionally designed to provoke a mistrial.

There is no question but that the prosecutor's remarks were inappropriate. Once again we must remind prosecutors that:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done .... It is as much his duty to refrain from improper methods calculated to produce a conviction as it is to use every legitimate means to bring about a just one.

*United States v. Capone*, 683 F.2d 582, 585 (1st Cir.1982) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

That despite our consistent warnings to the Government we should still be called upon to admonish against such conduct is reprehensible per se because it constitutes a disregard to our directives. But additionally it is particularly pernicious because it results in an unnecessary waste of judicial resources, both at the trial and appellate level, by diversion and attention to review of what by now should be understood to be totally unacceptable conduct by those who lay claim to representing the Government of the United States.

■ The issue, however, is not limited to deciding whether the Government acted improperly. What we must decide is whether in the context of this case the prosecutor's statements warrant reversal or dismissal. Central to that question is the determination of whether despite the instructions, appellant's trial was so prejudiced by the prosecutor's misstatements as to affect its outcome, *United States v. Capone*, 683 F.2d at 587; *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir.1982), or to warrant a sanction for the purpose of deterring future prosecu-

torial misconduct. *United States v. Farnkoff*, 535 F.2d 661, 668 n. 17 (1st Cir.1976).

Appellant claims that the prosecutor's statements were clearly improper and intended to inflame. Yet these statements must be viewed within the context of appellant counsel's own style and verbiage. In his opening statement appellant counsel called Densmore, the prosecution's star witness, "the government stool pigeon," a tone which set the standard of attack throughout the trial, and was followed up in his closing arguments by his reference to him as "this man who comes in and tries to appear like a schlumpy little electrician who is being bossed around by Joe Maccini." Such comments when coupled with a style that defense counsel himself described as "emotional," "excited," and which at times involved "shouting," made the prosecutor's rebuttal less reprehensible than it would otherwise have been. *United States v. Hedman*, 630 F.2d 1184, 1199 (9th Cir.1980); *United States v. Capone*, 683 F.2d 582, 586 (1st Cir.1982); *United States v. Battista*, 646 F.2d 237, 244 (6th Cir.1981). Although "[w]e do not hold ... that the prosecutor has free rein once defense counsel makes inflammatory remarks ...," *United States v. Flaherty*, 668 F.2d 566, 598 (1st Cir.1981), the mere fact that a transgression by the Government has occurred does not automatically trigger a sanction which places defendant in the position of an innocent bystander, if the Government's actions are not *actually* prejudicial to defendant's rights.

*United States v. Capone*, 683 F.2d 582, 586–87 (1st Cir.1982), presents an analysis of the relevant factors in determining whether prosecutorial impropriety provides the basis for reversal or mistrial: (1) whether the prosecutor's conduct was isolated and/or deliberate, (2) whether the trial judge's instructions were strong and explicit, and (3) whether it is likely that any prejudice that survived the judge's instructions could have affected the outcome of the case.

The prosecutor's appeal to passion was not only isolated and clearly unpremeditated but in fact was triggered in large part

by the aggressive and emotional tone set by defense counsel throughout the trial. Furthermore, they were made in the rebuttal argument at the end of a six-day trial, and thus it is unlikely "that the minds of the jurors would be so influenced by such incidental statements . . . ." *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940). This does not make the misconduct appropriate but tends to neutralize any harm they might have done by it. *United States v. Flaherty,* 668 F.2d at 598; *United States v. Capone,* 683 F.2d at 586.

Additionally, the impact of the prosecutor's misstatements was lessened, if not completely obliterated, by the trial judge's strong and pointed, curative instructions. As to the issue of aiding and abetting, he told the jury: [9]

> Bear in mind that arguments of counsel, just like opening statements . . . are not evidence, and you are obliged to decide this case on the basis of evidence . . . . I will explain to you what the issue of aiding and abetting is, but you are not being asked by the defense or by anybody to aid and abet anybody; you are required . . . to reach a fair and impartial verdict in this case on the basis of the evidence. Whatsoever way you decide you will not be aiding and abetting anybody.

As to the prosecutor's second statement during rebuttal, the trial judge told the jury:

> The error in that instruction is that it implies that there is a burden of proof on the defendant in a criminal case. He doesn't have to prove anything. He doesn't have to prove to you that Densmore and Scotti and others were lying for example. It is up to the Government to prove to you beyond a reasonable doubt that the Government's evidence warrants a conviction. There is no burden on defendant . . . .

There is no question but that these strong curative instructions were sufficient to correct any erroneous views in the mind of the jury that may have resulted from the Government counsel's rebuttal statements.

Waiting until the next day to give these instructions did not prejudice the defendant. If anything, the lapse of time aided in allowing the jury to forget what, in the context of a six-day trial, is a *de minimis* incident.

Under the circumstances of this case, the curative instructions were sufficient to correct the prosecutorial indiscretion. Appellant was not prejudiced. *United States v. Farnkoff,* 535 F.2d 661, 668 (1st Cir.1976); *United States v. Kim,* 595 F.2d 755 (D.C.Cir. 1979). We must add that in this case the proof of guilt was strong. Therefore, the prejudicial effect of the comments that may have endured the judge's instructions could not reasonably have affected the outcome of the trial. The evidence against Maccini was overwhelming. In addition to testimony given by Densmore and Scotti, his two former associates, there were other witnesses against him. Also, there were a substantial number of exhibits which evidenced his wrongdoing. "In sum, the record reveals that the jury's verdict could hardly have been the result of passion inspired by the brief remarks of the prosecutor but rather was based upon lengthy testimony [and] vigorous argument . . . ." *United States v. Capone,* 683 F.2d at 587.

The court below committed no reversible error.

*Affirmed.*

---

**9.** Judge Garrity's instructions are very lengthy and we will quote only the most relevant portions.