**UNITED STATES of America, Appellee,**

v.

**John D. GALLAGHER, Defendant, Appellant.**

No. 83–1723.

United States Court of Appeals, First Circuit.

Argued April 2, 1984.

Decided June 13, 1984.

---

Daniel W. Bates, Portland, Me., with whom Daniel G. Lilley Law Offices, P.A., Portland, Me., was on brief, for appellant.

F. Mark Terison, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on brief, for appellee.

* Of the Western District of Missouri, sitting by

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and HUNTER,* Senior District Judge.

BREYER, Circuit Judge.

Appellant, John D. Gallagher, was convicted of conspiring to commit, and committing various federal crimes related to transporting and receiving stolen cars in interstate commerce. (*See* 18 U.S.C. §§ 371, 2312, 2313.) On this appeal he raises three issues, none of which, in our view, warrants overturning his conviction.

1. Gallagher claims that the trial judge made certain comments to the jury, which deprived him of a fair trial. The judge made the comments after he learned that a codefendant, Batista, had approached a juror's wife in court and said "Tell your husband to find us innocent." The judge talked to the juror in question (out of the presence of the other jurors), excused him, seated an alternate juror, and then told the jury several things. He said,

> because of certain events that have transpired yesterday afternoon and last night, I must give you ... some additional instructions.

He added that the substitution of the juror

> was in no way attributable to any conduct on the part of the juror in question ... [who had] acted in accordance with the instructions that this court gave to all of you ....

He pointed out that the matter would receive press attention and he admonished them to avoid any contact with news reports about the trial. Finally, he stated

> I would at this time renew my prior instruction to you that you should report promptly to your jury officer, and if he is not available directly to the Court, any attempt by any person to contact you, talk with you or to communicate with you about this case. This is a matter of the greatest importance. I want to urge you to consider and accept my assurance that should any such attempt be made,

designation.

that the Court must know about it and that it's your duty to report it to me or cause it to be reported to me immediately just as it will then become my duty to deal with the situation that may ultimately unfold as a result of such a report. I have no wish to make your life burdensome. My every desire is to make your jury experience in this Court happy, pleasant and a rewarding one, but it is necessary that I advise you on this occasion that in the event that any such contact is made, you see that it is brought promptly, immediately in fact, to the attention of this Court.

The appellant sees in these remarks a "message" that his codefendant tried to tamper with the jury—a message that would make the jury unfairly prejudiced against him. We disagree. We see nothing in this set of circumstances and statements so unfairly prejudicial to appellant as to warrant a reversal of his conviction. The trial was long and complex, involving four defense counsel, and thirty-seven witnesses testifying over eight days. Batista's approach to the jury did not *automatically* require beginning the trial afresh. Yet, the court might well feel some comment was called for to prevent juror speculation and potential further unfairness. The instruction given reflects a reasonable balancing of the need for explanation, the desirability of an admonition against exposure to publicity, and an effort to protect the remaining defendants against unfairly adverse inferences.

Indeed, contrary to what appellant argues here (and consistent with what he argued below) the judge's comment does not single out codefendants as possible sources of the improper approach. Rather, a juror, using the comment to guess what had occurred, might have thought the government, the press, or some general member of the public, was responsible for any impropriety. The cases that appellant cites in support involve very different, and far more egregious, circumstances. *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) (reversal where judge told jury that defendant wiped his

hands, which is "almost always an indication of lying."); *Hart v. United States*, 240 F. 911 (2d Cir.1917) (judge told jury that defendants had tried to tamper with jury when in fact no tampering had occurred.) We repeat here what we said in *LaChappelle v. Moran*, 699 F.2d 560, 567 (1st Cir.1983),

> [T]he judge was faced with a troubling situation, and was attempting to handle it in a fair manner. Judges in our system are not mere bureaucrats. They have the ultimate responsibility to see that a trial is conducted fairly, and in difficult circumstances, such as occurred here, they must do what they think right.

In our view, the trial court's efforts to deal with this circumstance lie well within the ambit of its legal power.

■ 2. Gallagher objects to the following remarks made by the prosecutor in his rebuttal to defense counsel's closing arguments:

> I think every one of you would have felt, I hope you would have felt—I would have felt—derelict in your duty that I was derelict in my duty if I didn't do something to stop this interstate ring of organized criminal activity, because there is no doubt about what this is. This is organized. This isn't a one-shot deal or a two-shot deal. This involves people in different jurisdictions, in Massachusetts and in Maine, and as I told you in my opening statement, we have only seen a part of this. There are people down there in Massachusetts clearly who are part of this who we don't know about. Who stole those cars? I told you at the outset I don't know. You heard Detective Ross tell you about the thousands and thousands of cars that are stolen. We have touched the tip of the iceberg in this case but somehow you have to start somewhere.

Gallagher argues that these remarks improperly appealed to the jury's passions by suggesting that he was associated with "organized crime." The government replies that the prosecutor was simply refer-

ring to the dimensions of the very conspiracy to steal, to transport, and to resell cars that was at issue in the case before the jury. We are concerned by the remarks, for, even apart from the "organized crime" question, the prosecutor may have improperly "inject[ed] his personal beliefs about conclusions to be drawn from the evidence into his argument to the jury." *United States v. Flaherty*, 668 F.2d 566, 596 (1st Cir.1981); *see also United States v. Gonzalez Vargas*, 558 F.2d 631, 633 (1st Cir.1977).

We need not decide the question of propriety, however, for even if we assume for the sake of argument that the remarks were improper, they were not so prejudicial in the circumstances or so egregious as to warrant a new trial for reasons either of fairness or of deterrence. *United States v. Maccini*, 721 F.2d 840, 846 (1st Cir.1983); *United States v. Capone*, 683 F.2d 582, 585–86 (1st Cir.1982). For one thing, the remarks are isolated, comprising one portion of the prosecutor's rebuttal statement, made after an eight day trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240, 60 S.Ct. 811, 852, 84 L.Ed. 1129 (1940); *United States v. Maccini*, 721 F.2d at 846–47; *United States v. Capone*, 683 F.2d at 586. For another thing, the evidence against defendant was strong, making it unlikely that this short speech could have made a difference. *United States v. Maccini*, 721 F.2d at 847; *United States v. Capone*, 683 F.2d at 586. Further, the remarks seem not to have been deliberate. They constituted a rebuttal to defendant's claim that the government witness had acted alone; and, in context, they were aimed at suggesting that this was no one-man operation. The context was also one in which defense counsel had referred to government witnesses as "liars," "crooks," "bums," "lemmings," "animals," and "rodents," a fact that tends to neutralize the harm flowing from the prosecutor's remarks. *United States v. Maccini*, 721 F.2d at 846–47; *United States v. Capone*, 683 F.2d at 586; *United States v. Flaherty*, 668 F.2d at 598. Finally, defendants point to no effort on their part to seek a curative instruction. Apparently they simply sought a new trial. Even without this last-mentioned factor, the facts here are considerably less egregious than those at issue in *Capone* and *Maccini* where we held that there was no reversible error.

3. Finally, Gallagher argues that the district court erred in not ordering a new trial as he had requested. The motion for a new trial was based on Gallagher's claim that the government violated the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in failing to disclose an agreement between the government and a key prosecution witness, William Paulsen, under which the government promised not to prosecute Paulsen if he testified for the government. Any such nondisclosure would violate *Brady*. *Giglio v. United States*, 405 U.S. 150, 153–55, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972). But the fatal flaw in Gallagher's argument consists of the district court's finding that there was no such agreement. Paulsen submitted an affidavit alleging such an agreement; the U.S. Attorney in charge of the case, John Gleason, submitted an affidavit denying the agreement. The district court held a hearing, at which it apparently considered the affidavits. Defendant does not claim he made any effort to present any additional evidence. We can overturn the district court's factual finding only if it is without support in the record. *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980); *United States v. Idelicato*, 611 F.2d 376, 387 (1st Cir.1979); 3 C. Wright, *Federal Practice and Procedure* § 559 at 368 (1982). Gleason's detailed factual account of his conversation with Paulsen and his outright denial of Paulsen's claim provide adequate support.

Finding appellant's arguments without merit, we conclude that the judgment of the district court should be

*Affirmed.*