UNITED STATES of America, Appellee,

v.

Martha MEJIA–LOZANO,
Defendant, Appellant.

No. 86–1901.

United States Court of Appeals,
First Circuit.

Heard July 28, 1987.

Decided Sept. 23, 1987.

Warren Vazquez, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before BOWNES, NOONAN * and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Like Time, Martha Mejia-Lozano went a-flying. But, she gathered more than rose-buds—collecting first, some fourteen pounds of cocaine, and thereafter, a federal indictment. She was found guilty of certain charges by a jury. We present the details of the defendant-appellant's trip in the required post-conviction fashion, that is, in the light most flattering to the prosecution. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Cintolo,* 818 F.2d 980, 983 (1st Cir.1987).

## I

■ On April 29, 1986, Mejia-Lozano boarded Lufthansa Airlines Flight 517 in Bogota, Colombia, en route to Frankfurt, Germany and Geneva, Switzerland. She was ticketed through to Geneva and back. The plane, with appellant aboard, made a regularly scheduled stop at the Luis Munoz Marin International Airport in Puerto Rico.[1] Those passengers who planned to continue aboard, including appellant, disembarked into an in-transit holding area. Customs inspectors performed a routine search of the aircraft. Their suspicions were (justifiably) aroused by two suitcases which, upon closer examination, proved to contain large quantities of cocaine. The appellant had checked the bags with Lufthansa in Bogota, stipulating a Geneva destination for them. She had the baggage claim stubs in her possession. And upon questioning, she identified the loaded luggage as belonging to her.

Thomas R. Lincoln, San Juan, P.R., by Appointment of the Court, for defendant, appellant.

* Of the Ninth Circuit, sitting by designation.

1. The appellant has questioned whether the evidence is sufficient to permit the inference that the stopover in Puerto Rico was a scheduled one. Having carefully reviewed the record—especially the testimony of Abraham DeLeon, a customs inspector—we conclude that the jury could reasonably have inferred that the touchdown in Puerto Rico was a planned one rather than a forced landing or other unforeseen deviation.

Mejia-Lozano was swiftly arrested, charged, and indicted. She was accused, *inter alia*, of importation of a controlled substance in violation of 21 U.S.C. § 952(a) (Count I) and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count II).[2] After some five days of trial in the United States District Court for the District of Puerto Rico, a jury found Mejia-Lozano guilty on both counts. Following the imposition of sentence, she appealed.

## II

Appellant originally broached four issues for our perscrutation. The legal sufficiency of her main argument—that she was an authentic in-transit passenger who had no intention of entering the United States or of bringing narcotics into the United States—has lately been exploded by our decision in *United States v. McKenzie*, 818 F.2d 115 (1st Cir.1987). In *McKenzie*, on facts indistinguishable in any meaningful way from the facts of this case, we upheld a traveller's convictions under, *inter alia*, these same statutes. In respect to 21 U.S.C. § 952(a), we observed that the statute requires "little else but a showing that a defendant has knowingly brought a controlled substance with him from abroad into the United States," *id.* at 118, and that the transit lounge at the airport was clearly a part of the United States for purposes of the statute. *Id.* Our holding was as unequivocal with regard to 21 U.S.C. § 841(a)(1). We ruled:

> Although appellant did not, apparently, intend to distribute the narcotics in the United States, the *place* of intended distribution is not important so long as such intent is established together with the

fact of possession within the United States. . . .

*Id.* at 118 (emphasis in original). In language which has equal applicability to Mejia-Lozano's circumstances, we concluded:

> The seriousness and worldwide nature of the traffic in narcotics, which civilized nations have joined forces to stamp out, as well as the increased burden upon those efforts that recognition of some kind of in-transit exception would create, militate against the exemption appellant seeks. We decline to immunize international travellers who choose to pass through this country, however briefly.

*Id.* at 120.

*McKenzie* controls this case. In the process, the appellant's principal weaponry has been disarmed. That being recognized, we need not linger long in discussing Mejia-Lozano's remaining asseverations.

■ A. *Intent to Import.* Appellant argues that the government failed to prove that she "knew she would be coming to the United States," Appellant's Brief at 37. So, she argues, she lacked the requisite intent to import. Passing the obvious question of the knowledge properly inferable to a drug courier who boards an international flight with a regularly scheduled stopover in the United States, *see supra* n. 1, we find the appellant's premise to be ill-considered. 21 U.S.C. § 952(a) does not require the sort of specific intent that Mejia-Lozano assumes. It is sufficient that the defendant knowingly possessed the contraband, and brought it into the jurisdiction of the United States. *See McKenzie*, 818 F.2d at 118. Nothing in § 952(a) makes the accused's knowledge that she was landing on American soil, or her intent to do so, an element of the offense. This is neither a strained nor an unusual construc-

**2.** The pertinent portions of the statutes upon which the first two counts were founded read as follows:

> It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].

21 U.S.C. § 952(a).

> ... [I]t shall be unlawful for any person knowingly or intentionally—

> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....

21 U.S.C. § 841(a)(1).

Count III, which charged the accused with having violated 21 U.S.C. § 955, was dismissed by the district judge before the case was submitted to the jury. Therefore, we have no reason to address it.

tion of such a criminal statute. *Cf. Batsell v. United States*, 217 F.2d 257, 261–62 (8th Cir.1954) (Mann Act violated when, in course of transporting woman intra-state in Minnesota for immoral purposes, detour taken through Wisconsin).

On defendant's theory of the case, one could not be guilty of importation absent foreknowledge of the intended destination. Thus, a courier who knowingly possessed drugs yet blinded herself to the identity of the waystations along her route, could not be prosecuted for this offense. To construe the importation statute in such a stilted manner would run at cross purposes with the discernible intent of the enacting Congress and would place an unrealistically heavy burden upon the government. We decline to adopt such a myopic view. Mejia-Lozano selected the flight. She boarded it without demonstrable duress. We hold that the offense was complete the moment defendant, knowingly in possession of cocaine, landed in this country with the contraband, regardless of her knowledge of the aircraft's itinerary or the planned terminus of her journey.

■ B. *Jury Instructions.* The chief fault which the defendant finds with the charge seems to be the district judge's failure to instruct the jury in line with Mejia-Lozano's concept of "intent to import." Inasmuch as we have rejected that formulation outright, *see supra* Part II-A, we give but short shrift to the related claim of error in the jury instructions.

"The charge must, of course, be considered as a whole, not in isolated bits and pieces." *Cintolo*, 818 F.2d at 1003. We find that, in general, the district court's instructions as to knowledge and intent were adequate. Mejia-Lozano was not entitled to the exact charge that she requested. *See supra* Part II-A. And, in the absence of any further (specific) objection sufficient to meet the rigors of Fed.R.Crim.P. 30, we review the instructions only for plain errors, *United States v. Griffin*, 818 F.2d 97, 99–100 (1st Cir.1987), that is, "errors so shocking that they seriously affect the fundamental fairness and basic integrity" of the trial. *Id.* at 100. We have been unable to fathom any error—plain or otherwise—here.

It is no cognizable ground for complaint that the trial judge failed "to use the precise language that defendant ... would have preferred." *United States v. Lavoie*, 721 F.2d 407, 409 (1st Cir.1983), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1424, 79 L.Ed.2d 749 (1984). On the whole, we believe the charge to have been an accurate and reasonably complete one. The assignment of instructional error is entirely devoid of merit.

C. *Summation.* Appellant's final claim revolves around the prosecutor's closing argument to the jury—a polemic which, in Mejia-Lozano's view, contained no less than a quintet of gross improprieties. Because this misconduct deprived her of a fair trial, she asserts, her conviction must be overturned. We are not convinced.

The five instances of alleged impropriety cited by appellant can be summarized as follows: (i) that the prosecutor created a false impression when he referred to certain evidence as having been excluded for "legal reasons"; (ii) that he substantially distorted the testimony of a chemist; (iii) that he argued an "erroneous and misleading" theory of law to the jury; (iv) that he improperly compared the defendant to murderers and terrorists; and (v) that he vouched for government witnesses.

■ The first two of these incidents can be dismissed out of hand. Examination of the trial transcript reveals that no contemporaneous objection was interposed in either instance. That failure forecloses appellate consideration except upon a showing of plain error. *Griffin*, 818 F.2d at 99–100 & n. 1; *United States v. Fuller*, 768 F.2d 343, 347 (1st Cir.1985). Neither of these piddling points comes close to invoking the plain error doctrine—a doctrine which, it must be remembered, "does not permit us to consider the ordinary backfires—whether or not harmful to a litigant's cause—which may mar a trial record." *Griffin*, 818 F.2d at 100.

■ The third claim—that the prosecutor argued an "erroneous and misleading" le-

gal theory to the jury—may have been procedurally defaulted as well. When this argument (which dealt with Mejia-Lozano's intent to import cocaine into the United States) was first made, Tr. 339–40, there was no contemporaneous objection. When the prosecutor elaborated on it in his rebuttal argument, Tr. 356–57, defense counsel did object. We need not dwell, however, on whether the failure initially to protest worked a waiver of the later objection. The matter of defendant's knowledge that she was flying to the United States was in all events a nonissue. *See supra* Part II-A. More important still, the district judge told the jury on at least three occasions—at the start of trial, during final argument, and in the course of the charge—that they were to take the law from the court. Reversal is not warranted under such circumstances. *See United States v. Tapia,* 738 F.2d 18, 21 (1st Cir.) (prosecutor's rendition of his version of controlling legal principles not prejudicial when "the judge made clear to the jury that it was the judge's description of the law—not that of either counsel—that was to control"), *cert. denied,* 469 U.S. 869, 105 S.Ct. 217, 83 L.Ed.2d 147 (1984).

■ The appellant's fourth assertion comprises a nonissue as well. Although her counsel insists that the prosecutor "compared" Mejia-Lozano to murderers and terrorists, the transcript belies that overblown claim. No such comparison was attempted.[3] Accordingly, the argument need not be further addressed.

The appellant's last sally—that the prosecutor impermissibly vouched for a government witness—is more troubling. Speaking of the witness Aponte, an agent of the federal Drug Enforcement Administration, the Assistant United States Attorney declaimed:

> ... You have just heard one of our best Drug Enforcement Administration officers here and he was honest to tell you, "I don't remember," and that was it. That is a show of honesty, not otherwise, as Brother Counsel Lincoln tried to make it look before you. An honest man, an honest U.S. Government officer. That is what you had there. Honest Government agents telling you the truth, and if they did not remember the truth, they just do not remember. That is the show you had before you, honesty, because that is the only way you can fight crimes as this, with honesty.

Once again, defense counsel failed to interpose a timely objection; thus, Mejia-Lozano must clear the "plain error" hurdle. She falls short of doing so.

■ We have stated, more often than we care to remember, that it is wrong for a prosecuting attorney to inject his personal beliefs into his summation. *E.g., United States v. Cresta,* 825 F.2d 538, 555 (1st Cir.1987); *United States v. Rosa,* 705 F.2d 1375, 1379–80 (1st Cir.1983); *United States v. Flaherty,* 668 F.2d 566, 596–97 (1st Cir. 1981). Arguably, the quoted remarks edged across this border into forbidden terrain. *See United States v. Martin,* 815 F.2d 818, 822–23 (1st Cir.1987) (disapproving prosecutor's statement to jury that government witnesses "told you the truth").

---

**3.** The only reference to "murderers" or "terrorists"—and an oblique one at that—occurred when the Assistant United States Attorney attempted to illustrate his "intent" argument. He said:

> Take the example of the terrorist who is carrying a bomb to blow up at the airport in Paris, but he lands here in Puerto Rico and they find the defendant, they find that terrorist and they find that bomb—[colloquy, objection, and ruling; then, argument continues] ... If that bomb and that terrorist are found landing here, he had the intention to bring that bomb here, even if he was going to blow up the airport of Paris. He still is criminally

liable. They are not going to let him go, the United States let him go. "No, he was going to blow up that bomb in Paris, let him go."

The United States Constitution, to which the defense counsel refers, would be a mockery if this lady imported the drug here and be let go. "Oh, she was going to bring it to Geneva."

Passing the question of whether the argument was a persuasive one or not on the nonissue of intent, it is absolutely plain that the prosecutor did not, as the defense suggests, compare Mejia-Lozano on moral grounds with terrorists or murderers. The district judge acted within his wide discretion in overruling the objection.

That finding, however, does not end our inquiry. We must proceed to determine whether the offending conduct so poisoned the well that the trial's outcome was likely affected (or alternatively, whether the breach was so egregious that reversal becomes a desirable sanction to forestall future prosecutorial trespasses). *See United States v. Giry,* 818 F.2d 120, 133 (1st Cir. 1987); *United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983). We have devised a three part test to guide this inquiry. *See id.* Rather than engage in rote repetition of this test, we simply note that here:

1. The prosecutor's "vouching" was an isolated instance, and was in response to a no-holds-barred attack launched by defense counsel in final argument anent the credibility of the government witnesses in general and agent Aponte in particular. Though there are limits to the extent that we will permit fighting fire with fire, "the prosecutor is given somewhat greater leeway in rebuttal to rehabilitate his witnesses in response to defense counsel's inflammatory statements." *Cresta,* at 556. Here, as in *United States v. Gallagher,* 735 F.2d 641, 644 (1st Cir.1984), defense counsel's argument had the tendency of "neutraliz[ing] the harm flowing from the prosecutor's remarks." And, the challenged comments were not of such a brazen nature as to warrant reversal of the conviction as a sanction against the government. *Cf. Martin,* 815 F.2d at 823 (prosecutor's remark that government witnesses told the truth "can also be taken in context simply as rhetoric").

2. The district judge gave strong and explicit instructions at several key points in the trial, both before and after final argument, to the effect that only the evidence in the case should be considered, that the statements of counsel were not evidence, and that the jurors were the sole judges of the facts and of the credibility of witnesses. These admonitions, in their frequency, timing, and content, compare favorably with instructions that have satisfied the second part of our tripartite test on past occasions. *E.g., Cresta,* at 556; *Giry,* 818 F.2d at 134; *Maccini,* 721 F.2d at 847.

3. The chance that these statements—excessively enthusiastic though they may have been—affected the outcome of the trial was negligible. As our earlier cases teach, the strength of the government's case is an important factor in considering the likely effect of borderline rhetoric. *E.g., Gallagher,* 735 F.2d at 644; *Maccini,* 721 F.2d at 847; *United States v. Capone,* 683 F.2d 582, 586 (1st Cir.1982). The evidence marshalled against this defendant was overpowering. Her entire defense, such as it was, invoked legal—as opposed to factual—matters. The odds against the jury's verdict having been swayed by these brief prosecutorial dicta stretch out towards infinity.

■ In short, given the passing nature of the reference, the firm and repeated instructions of an able trial judge, and the lack of any reasonable possibility of prejudice, we find that the Assistant United States Attorney's concluding flourish, though leaving a sour taste, did not irretrievably poison the well. There was no reversible error.[4]

## III

We need go no further. The record reflects that Mejia-Lozano was afforded a fair and impartial trial, that the evidence of her guilt was more than sufficient to support the jury's verdict, and that her conviction was not tainted by harmful error either in the judge's charge or in the prosecutor's summation. Her drug-laden journey justifiably ended in indictment and conviction.

*Affirmed.*

---

4. In an abundance of caution, we have also considered whether the cumulative effect of missteps in the prosecutor's closing argument could conceivably have skewed the balance. We reject any such likelihood. In the first place—apart from the prosecutor's sponsorship of Aponte's credibility—the summation does not appear to have strayed beyond the pale. Moreover, it seems to us highly unlikely, given the strength of the government's case and the clear and oft-repeated admonitions of the judge, that any borderline lapses in the final argument could have made an appreciable difference in the outcome of the litigation.