**UNITED STATES of America, Appellee,**

v.

**Luis Alberto VICTORIA,
Defendant, Appellant.**

No. 87–2133.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1989.

Decided May 26, 1989.

Robert A. Costantino, Boston, Mass., by Appointment of the Court, for defendant, appellant.

J. Douglas Wilson, Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief for U.S.

Before BREYER, Circuit Judge, ALDRICH, Senior Circuit Judge, and PETTINE,* Senior District Judge.

BREYER, Circuit Judge.

Luis Alberto Victoria appeals his conviction for "knowingly ... possess[ing]" marijuana "on board a vessel subject to the jurisdiction of the United States" (namely,

* Of the District of Rhode Island, sitting by desig-     nation.

**1010**

a "vessel without nationality"), with an "intent to ... distribute" the marijuana. 46 U.S.C. App. § 1903 (Supp. IV 1986) (recodifying 21 U.S.C. § 955c). The essential facts are the following:

1. On Dec. 2, 1986, a United States Navy airplane reported to the United States Coast Guard Cutter Galveston that it had seen a fishing boat sixty miles off the coast of Colombia (in an area known for drug activity) heading north.

2. The Galveston turned to intercept the boat (a sixty-seven foot fishing boat called the "Delfin"). The plane reported that the Delfin had turned and that it was now heading south.

3. When the Galveston reached the Delfin, it found that the Delfin had no flag or any other indications of nationality, that it was not moving, that its engines were off, that it was riding low in the water, and that it was in a state of disrepair. The Delfin did not respond to radio messages or shouts over a loud "hailer."

4. The Galveston then sent a small boat towards the Delfin. The Delfin started its engines and began to sail away; the small boat caught up to the Delfin; the Delfin did not respond to questions—asked through an interpreter—about its nationality; the Coast Guard officer in the small boat noticed the odor of marijuana coming from the Delfin; and the Coast Guard boarded the Delfin.

5. Once on board the Coast Guard found about 17,000 pounds of marijuana, eight crew members (including appellant), navigational charts indicating a course for the northern Bahamas and southern tip of Florida, and special navigational equipment that an expert testified (to use the words of appellant's brief, at 7) was the kind "used in the Caribbean off the southeast coast of the United States." The Coast Guard found no evidence of the Delfin's nationality.

6. The Coast Guard seized the Delfin and brought the crew back to San Juan, where the government charged them with violations of United States narcotics laws.

Appellant makes four claims. We find none of them convincing. First, after urging that Congress did not intend the statute under which he was convicted to extend beyond the bounds of international law, *see Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804) (Marshall, C.J.); *see also Weinberger v. Rossi*, 456 U.S. 25, 32, 102 S.Ct. 1510, 1515–17, 71 L.Ed.2d 715 (1982); *United States v. Robinson*, 843 F.2d 1, 2–3 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 93, 102 L.Ed.2d 69 (1988); *United States v. Marino–Garcia*, 679 F.2d 1373, 1380 (11th Cir.1982), *cert. denied*, 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983), appellant says that international law would not permit the United States to convict him for possessing marijuana so near Colombia and so far from the United States. This latter assertion is not correct. The Delfin was a "stateless" vessel. It not only failed to respond to multilingual inquiries about its nationality, but also the Coast Guard could find no evidence of its nationality on board. The relevant statute, 46 U.S.C. App. § 1903(c), provides that "any vessel aboard which the master or person in charge fails, upon request of an officer of the United States ..., to make a claim of nationality or registry for that vessel" is a "vessel without nationality." The statute says that such a vessel is "subject to the jurisdiction of the United States." And, as United States courts have interpreted international law, that law gives the "United States ... authority to treat stateless vessels as if they were its own." *United States v. Smith*, 680 F.2d 255, 258 (1st Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983). Thus the United States, as a matter of international law, may prosecute drug offenders on stateless ships found on the high seas. *See id.; United States v. Alvarez–Mena*, 765 F.2d 1259, 1265, 1266 (5th Cir.1985); *United States v. Henriquez*, 731 F.2d 131, 134 (2d Cir.1984); *United States v. Pinto–Mejia*, 720 F.2d 248, 260–61 (2d Cir.1983), *modified in other part*, 728 F.2d 142 (1984); *Marino–Garcia*, 679 F.2d at 1382–83; *United States v. Howard–Arias*, 679 F.2d 363, 371 (4th Cir.), *cert. denied*, 459

U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). Other courts have explained in detail why this is so, and we agree with their reasoning. In particular, see *Alvarez–Mena*, 765 F.2d at 1265–1266 ("Stateless vessels on the high seas enjoy little, if any, protection under international law.... the well-established rule of international law [is] that stateless vessels on the high seas may be subjected to the jurisdiction of any nation."); *Pinto–Mejia*, 720 F.2d at 260–61 ("a stateless vessel, which does not sail under the flag of one state to whose jurisdiction it has submitted, may not claim the protection of international law ... stateless vessels on the high seas are, by virtue of their statelessness, subject to the jurisdiction of the United States."); *Marino–Garcia*, 679 F.2d at 1382–83 ("restrictions on the right to assert jurisdiction over foreign vessels on the high seas ... have no applicability in connection with stateless vessels.... international law permits any nation to subject stateless vessels on the high seas to its jurisdiction ... *solely* as a consequence of the vessel's status as stateless.") (emphasis in original); *United States v. Rubies*, 612 F.2d 397, 402–03 (9th Cir.1979) (observing that international law is law among sovereigns, and protects the ships of one sovereign from the jurisdiction of others; "[a]n unregistered or 'stateless' vessel, however, does not have these rights and protections"), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794, *rehg. denied*, 448 U.S. 912, 101 S.Ct. 28, 65 L.Ed. 2d 1174 (1980); *United States v. Cortes*, 588 F.2d 106, 110 (5th Cir.1979) ("international law shelters only members of the international community of nations from unlawful boarding and searches on the high seas"). *See also* Shearer, *Problems of Jurisdiction and Law Enforcement Against Delinquent Vessels*, 35 Int'l & Comp. L.Q. 320, 336 (1986) ("it has been accepted doctrine since at least as long ago as Ortolan's treatise of 1845 that a ship without a nationality, or unwilling to claim one, has no right of navigation by international law"); Note, *Drug Enforcement on the High Seas: Stateless Vessel Jurisdiction over Shipboard Criminality by Non–Resident Alien Crewmembers*, 11 Maritime Lawyer 163, 171–78 (1986).

Second, appellant argues that the evidence in the record was insufficient to support his conviction. Appellant says he has shown that he was "merely present" on the Delfin, and therefore that he did not possess the marijuana with an intent to distribute it. *United States v. Luciano–Pacheco*, 794 F.2d 7, 10–11 (1st Cir.1986) ("mere presence" may be insufficient to support conviction); *United States v. Quejada–Zurique*, 708 F.2d 857, 859 (1st Cir.), *cert. denied*, 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983) (same); *Smith*, 680 F.2d at 260 (same). Viewing the evidence in a light appropriately favorable to the government, *see Luciano–Pacheco*, 794 F.2d at 10; *United States v. Beltran*, 761 F.2d 1, 5–6 (1st Cir.1985), we disagree. If the appellant were an ordinary crew member, his argument would be close to frivolous. The Delfin was a fairly small fishing boat (sixty-seven feet), but the amount of marijuana was fairly large (17,000 pounds), *see United States v. Cruz–Valdez*, 773 F.2d 1541, 1546–47 (11th Cir.1985) (en banc) (thousands of pounds of marijuana on a sixty-eight foot boat suggests that all on board were involved in crime), *cert. denied*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986); *Beltran*, 761 F.2d at 6 (similar). The boat appeared (from the charts and equipment and heading) to be sailing towards Florida, a trip of several hundred miles, *see United States v. Bent*, 702 F.2d 210, 214 (11th Cir.1983) ("probable length of the voyage" suggests knowing possession). And the boat seemed to have more crew members than it needed for, say, ordinary fishing. *See Robinson*, 843 F.2d at 9 (extra crew suggests intent to unload drugs); *United States v. Molinares–Charris*, 822 F.2d 1213, 1219 (1st Cir.1987) (same). In addition, one could smell the marijuana from the nearby water. *See Molinares–Charris*, 822 F.2d at 1219 ("The perceptible odor of marijuana supports an inference that innocent third parties would not have been hired on as members of the crew"); *Robinson*, 843 F.2d at 8 (noting that marijuana odor is often the key factor in inferring guilt). All these facts mean

that the jury could reasonably believe that the organizers of the trip would not have permitted appellant to come along unless he were involved in their unlawful efforts. Moreover, the Delfin's failure to respond to the Coast Guard hailings, and its evasive tactics—appearing to turn upon being sighted from the air, and to run away upon being approached by the small Coast Guard boat—suggest guilt. *See Robinson,* 843 F.2d at 9; *Beltran,* 761 F.2d at 7; *United States v. Villegas–Rojas,* 715 F.2d 564, 566 (11th Cir.1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

■ Appellant argues, however, that this case is special in that he testified without contradiction that he is an electrician whom crew members brought on to the ship at six in the morning on December 2nd to help with repairs. He said that he wanted to return home later in the day, but a crew member with a gun prevented him from leaving. Appellant's argument might have helped him with the jury, but it cannot help him here. That is because (1) the jury may simply not have believed his story, *see Molinares–Charris,* 822 F.2d at 1218 ("A jury is entitled to conclude that those aboard a vessel engaged in obvious illegal activity are not innocent bystanders."); *Beltran,* 761 F.2d at 6; or, (2) the jury may have believed that, given the obvious presence of many bales of marijuana, the crew would not have brought anyone (even an electrician) on board unless he knew about, and was helping them with, their enterprise. *See Robinson,* 843 F.2d at 8; *Cruz–Valdez,* 773 F.2d at 1546 (220 bales of marijuana weighing thousands of pounds on a 68–foot boat was so large a quantity that "it [is] most unlikely that the persons on board will be ignorant of its presence" and "it is highly improbable that drug smugglers would allow an outsider on board a vessel filled with millions of dollars worth of contraband"); *Beltran,* 761 F.2d at 6–7; *Bent,* 702 F.2d at 214. And, of course, such help with the criminal enterprise—whether as a sailor or an electrician or both—is sufficient to make appellant a principal in the crime.

■ Third, appellant argues that the prosecutor's remarks in rebuttal argument unfairly, and unlawfully, prejudiced the jury against him. The particular comments consist of the prosecutor's reference to the odor of drugs as "the stink of the rotten junk;" his warning of the threat to "poison our children" posed by drug smuggling; and his statement that appellant was able "to distinguish between good and evil ... [t]o see the way of God and the devil." Although this language, taken out of context, might seem strong, we have read the full closing arguments of both sides. After reading these remarks in context, we have concluded that they could not have altered the outcome of the trial and that they do not warrant a deterrent sanction. *See United States v. Giry,* 818 F.2d 120, 133 (1st Cir.) (misstatements must be not only improper, but so severe that they alter the outcome of the trial or warrant a deterrent sanction), *cert. denied,* —— U.S. ——, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987); *United States v. Maccini,* 721 F.2d 840, 846 (1st Cir.1983) (same); *United States v. Capone,* 683 F.2d 582, 585–86 (1st Cir.1982) (same). They are potentially less harmful than remarks we have permitted in many other cases. *See, e.g., United States v. Doe,* 860 F.2d 488, 492–95 (1st Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1961, 104 L.Ed.2d 430 (1989); *United States v. Mejia–Lozano,* 829 F.2d 268, 273–74 (1st Cir. 1987); *United States v. Gallagher,* 735 F.2d 641, 643–44 (1st Cir.1984); *Maccini,* 721 F.2d at 846–47; *Capone,* 683 F.2d at 586–87. And they responded to appellant's counsel's own references to appellant's need to "feed his family" and to God, and his comparisons of the United States' legal system to that of the "Nazi Regime." *See Gallagher,* 735 F.2d at 644; *United States v. Flaherty,* 668 F.2d 566, 598 (1st Cir.1981) ("when defense counsel makes inflammatory statements, we will allow the prosecutor somewhat greater leeway in rebuttal").

■ Fourth, appellant complains that he was inadequately represented by counsel at trial, because his counsel failed to raise, by appropriate motion or objection, the second and third legal arguments we have con-

sidered above. We have found those arguments to be without legal merit. Since raising meritless points would not have affected the outcome of the trial, counsel's failure to raise them did not constitute "ineffective assistance." *See Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984); *United States v. Andiarena*, 823 F.2d 673, 678–79 (1st Cir.1987); *United States v. Fuller*, 768 F.2d 343, 346–47 (1st Cir.1985).

The judgment of the district court is

*Affirmed.*